The Chancelloh.
Eichard Van Duyne, late of the county of Morris, in and by his last will and testament, among other things, gave and devised as follows, viz. “ I give unto my wife Elizabeth the use of that part of my house which I now occupy during her widowhood, .... and her ftdl and comfortable support during her widowhood, to be provided by my son Isaac, as my executor shall direct.” — “ I give unto my son Isaac .... that part of my farm between the main road in front of my house and the line of my son-in-law, Mcholas Hiler, and that part of the mountain lot which is not enclosed, subject to the payment of my debts and the support of my wife.”
The bill is filed to enforce the provision thus made in favor of the widow of the testator against the real estate devised to his son Isaac. The testator -died on the 12th of April, 1847. The widow continued to live with her son Isaac, and to be supported by him until his death, on the 19th of May, 1858. On the 23d of May, she was removed to the residence of her son, Martin Van Duyne, who was the sole executor of the will, and according to whose direction the support of the widow was to be provided by Isaac. Since the death of Isaac, the complainant has received nothing from his estate for her support.
The support of the widow of the testator is made a charge upon the real estate devised to Isaac. The land is devised to the son, subject to the support of the wife of the testator *52 during her widowhood. The provisions of the will are too clear and explicit to leave room for doubt or controversy. She is entitled to her support out of the land, in whosesoever hands it may be.
The first ground of objection raised by the answer to the relief sought by the bill is, that the testator’s son Isaac, to whom the land was devised, did not take the land by gift, but that he was a purchaser for valuable consideration. The answer does not deny that he accepted the devise, nor that he held the land under the provisions of the will, performing the conditions thereby imposed upon him during his life. But it is averred that the devisee worked for his father several years after he was of age, and until the death of his father, without receiving any adequate compensation therefor, and that, according to the defendants’ belief, all the property devised to Isaac by his father was little, if any less valuable than the equitable value of the labor performed for his father, for which he received no compensation except the aforesaid devise of land; and that, by reason thereof, the land cannot, in equity, be charged with the support of the widow to an amount beyond the value of her dower.
If these allegations were sustained by the evidence, they would constitute no defence to the complainant’s bill.
It is a maxim in a court of equity not to permit the same person to hold under and against a will. Herbert v. Wren, 7 Cranch 378.
The principle, as stated by Mr. Jarman, is, that he who accepts a benefit under a deed or will must adopt the whole contents of the instrument, conforming to all its provisions and renouncing every-right inconsistent with it. 1 Jarman on Wills 385.
The rule in equity is well settled. A man shall not take any beneficial interest under a will, and at the same time set up any right or claim of his own, even if otherwise legal and well grounded, which shall defeat or in any way prevent the full effect and operation of every part of the will. Hyde v. Baldwin, 17 Pick. 308; Stevenson v. Brown, 3 Green’s Ch. *53 R. 503; Remington v. Kirwan, 2 Sch. & Lef. 449 ; 2 Story’s Eq. Jur., § 1077.
A second ground of defence is, that it was the intention of the testator, Richard Van Duyne, that his widow should reside in the mansion-house and be supported upon the farm, and that, by voluntarily abandoning the farm, and residing elsewhere, she has forfeited her right to the support provided for her by the will.
It is highly probable that the testator expected that his widow would continue to live with her son upon the farm. Such an arrangement he would naturally regard as most conducive to the comfort and happiness of the widow, and to the interest of all parties concerned. With a view to this arrangement, he gave her the use of a part of his mansion-house. But there is nothing in the will requiring the widow to reside upon the farm, or making the provision for her support depend upon that contingency. Such a restriction might operate virtually to defeat the provision for the widow’s support. The title to the farm, during the son’s life or at his death, might pass into the hands of strangers, with whom the widow could not reside with comfort or propriety. A change of circumstances, with the advance of years and infirmities, might render it essential to her decent and comfortable support that she should reside elsewhere. But whatever might be the expediency or inexpediency of such provision, it is clear that the testator has made the support of the widow an absolute charge upon the land devised to his son without condition or restriction. She is entitled to her support, whether she reside upon the farm or elsewhere. In making provision for her support, the court will have regard to all the provisions of the will, and will make such allowance as, under the circumstances, is reasonable and just. Stilwell v. Pease, 3 Green’s Ch. R. 76.
In Sehanek v. Arrowsmith, 1 Stockt. 330, where, by the terms of the will, a home was provided for the widow on the land devised, which was afterwards destroyed by fire, and the devisee of the land was ordered, by the will, there to *54 maintain and support her, it was-held that the land was to he charged only with such reasonable sum as would have supported the widow, if occupying the dwellings designated' and provided for her. The same principle may properly be applied in the present case in ascertaining the amount to be allowed to the widow, if it appear that she left the farm or was removed by the executor without justifiable cause.
Upon a careful examination of the voluminous evidence in the case, I think the removal of the complainant from the homestead after the death of her son Isaac was justifiable and proper. She was aged and infirm. Her situation demanded that considerate care and attention which kindness and affection alone would prompt and render. It was eminently proper that her home should be with one of her children. No stranger could be expected to render those services which would render her declining years comfortable. So long as her son Isaac lived, it was natural that she should have preferred to remain with him, even at the expense of personal inconvenience and occasional neglect and inattention to her wants. After his death, there were the strongest reasons for her removal. The clearest evidence of its propriety is furnished by her own solicitude, under the weight of years and infirmity, to leave the home where she had long lived, and to which she must naturally have felt a strong attachment. No provision whatever had been made by Isaac’s will for her support, and no directions given for her comfort or well being. The relations subsisting between herself and her daughter-in-law were not friendly, and certainly not of a character to insure those attentions which are essential to the comfort of the aged and infirm. The changes which occurred in the family soon after the death of the son, by the marriage of his widow and both his daughters, would have rendered a removal of ..the complainant necessary, if it had not been made immediately after her son’s death.
I-find nothing in the evidence to warrant the conclusion that the complainant was removed to the house of her son Martin. from any unworthy or interested motive upon his *55 part. From the trust reposed in him by the will of his father, as well as from his relation to the complainant, both duty and affection demanded that he should see that his mother was furnished a full and comfortable support, as directed by the will. No place was more appropriate for her residence than his own home. Her other children were unable or unwilling to open their houses for her accommodation. It is not probable that any interested or pecuniary motive could, under the circumstances, have prompted the course which was adopted. However this may be, it cannot affect the complainant’s right to recover the provision made for her support.
The complainant is entitled to her support out of the land devised by her husband to her son Isaac, and, if necessary, to have the land sold for that purpose. The defendants will be decreed to pay the amount already accrued, and to provide for the complainant’s future support by quarterly payments.
Much evidence has already been taken to show the value of the provision made for the complainant, and the amount to which she is equitably entitled for her support. It is not probable that further evidence will furnish any additional aid in determining the matter, or that any advantage will be derived from a reference. I think one hundred and twenty-five dollars a year for the first year after the removal of the complainant, and one hundred and fifty dollars a year since that time, in view of all the evidence under the peculiar circumstances of the case, will be a proper allowance for the widow’s support. Circumstances may render a change of this allowance necessary, and leave will be given to either party, if desired, to make application for that purpose. It will be right that the complainant, receiving this allowance, should release all her title to the property as a residence under the will.
This suggestion, as to the proper amount of the allowance to be made to the complainant, is made in view of the evidence already taken, in the .hope of saving the parties fur *56 ther expense and litigation. If, however, it is deemed necessary, by either party, that further evidence should be taken, a reference will be ordered, unless the parties can, by consent, agree upon the amount and terms of payment.