## PETRIE *vs.* VOORHEES' EXECUTOR and others.

1. A court of equity has power, in cases where there is a clear debt or duty to be paid or performed by the testator or his executors at a future day, to order that sufficient assets for the discharge of it be retained and secured by the executor, before distribution of the estate. There is no adequate remedy at law in such case, and the creditor ought not to be left to follow the legatees, or resort to the refunding bonds for the share of each.

2. An indenture of apprenticeship, with covenants valid in the state where executed, will be enforced in the courts of this state, if not *contra bonos mores*, or against the policy of our law. The personal status of each individual is governed by the law of actual domicil.

3. In general, executors are bound by all covenants of the testator, except such as must be performed by him in person.

4. In a contract of apprenticeship the covenant to support must be limited to the time of service, and cease when that ends. But the principle must be settled at law, and unless the right is so settled the aid of this court cannot be extended to prevent the distribution of the master's estate to protect a doubtful claim.

5. To bar a claim against an estate, under the rule limiting creditors,

(*Nix. Dig.* 589, ¿ 70,) there must be proof that the notice was advertised or set up as required by law.

6. A provision·made by a master in his will, for the support of his apprentice, if liberal according to his circumstances and her condition, must be taken to be a satisfaction of his obligation to support her.

*Mr. W. J. Magie*, for complainant.

*Mr. Ludlow*, for defendants.

The Chancellor.

The complainant, Rosina Petrie, an inhabitant of the state of New York, had been placed by her mother under the control of the American Female Guardian Society, a corporation of that state. That society, by indenture, dated October 4th, 1860, bound her, then being a few days over four years old, an apprentice to Abraham V. N. Voorhees, of the city of New Brunswick, in this state, the testator of the defendants, to serve and dwell with him as an apprentice until she should arrive at the age of eighteen years. The indentures, which were under seal, were executed by the society and the testator, and not by the infant. The society covenanted that she should serve Voorhees during that time on all lawful business, according to her power, wit, and ability. And Voorhees covenanted with the society that he would provide for her during that term, " competent and sufficient meat, drink, and apparel, washing, lodging, mending, and all other things necessary and fit for an apprentice, and teach and instruct, or cause her to be taught and instructed, to. read and write, and so much of arithmetic, spelling, and grammar, as is needful for persons in the ordinary ranks of life ;" also, that at the end of the term,. he would give her a new bible and fifty dollars in money ; and also, that during the term he would cause her on Sunday to attend public worship and Sunday school, and frequently to read the Holy Scriptures aloud ; that he would not suffer her to be absent from his

service without leave, or to haunt taverns or theatres, or to play at any unlawful game.

The indenture stated that although it binds the child strictly as an aprentice, it was the intention of the parties that she should be received and reside in the family as an adopted child, and be treated with like care and kindness as if she were the child of Voorhees. This instrument was executed in New York, and the society had, by the laws of that state, power thus to bind the child, and both parties were bound by its covenants, whatever may be their legal construction.

The testator received the complainant into his family at New Brunswick, and she continued with him, serving under the indenture, until his death, October 29th, 1863.

He left a will, which was duly proved by the defendants. Having no children, and an estate amounting in all to about thirteen thousand dollars, after giving specific legacies to the amount of three hundred and forty-five dollars, he bequeathed to his wife two thousand dollars in money, and directed his executor to place four thousand dollars at interest, and pay to his wife during her life the interest, and so much of the principal as she should ask for her support. And at her death he ordered one half of the principal to be paid to the complainant, or if she was dead, to her issue; the other half to his own sisters and brothers. He gave the complainant, besides, a melodeon; and further directed his executors to place one thousand dollars at interest, and appropriate the interest to the support of the complainant until twenty-one, and then to pay her the principal, or to pay the same to her children if she should have died leaving issue; if no issue, to his brothers and sisters. After divers pecuniary legacies following these in the will, all which he directs, in case of deficiency of assets, to be paid in the order in which they stand, he directs the residue, if any, to be invested and disposed of as the sum of four thousand dollars is directed to be invested and disposed of, which gives, at the death of his wife, one half of it to the complainant.

His debts exceeded three thousand one hundred dollars,

and these, with the specific legacies, and the seven thousand dollars given to his wife and the complainant, leaves less than twenty-five hundred dollars for expenses of administration, and the other pecuniary legacies. This sum is insufficient to pay them. There will be no residue, and the legacies last in order will not be paid.

The defendant, Garret G. Voorhees, who alone has answered the bill, was the father of the testator, and was the acting executor. He had taken and advertised the ordinary rule for the limitation of creditors, and had given notice of presenting the final account for settlement and allowance. At this point the bill in this case was exhibited by the complainant, through Rosetta Voorhees the widow of the testator, as her next friend, to restrain the allowance of the final account and the distribution of the estate according to the will, and to have a sufficient amount of the estate first set aside and secured to enable the executor to fulfil the covenants entered into by the testator for her support, maintenance, and education, until eighteen years of age.

The first question is as to the jurisdiction of the court to grant this relief. A court of equity has power, in cases where there is a clear debt or duty to be paid or performed by the testator or his executors at a future day, to order that sufficient assets for the discharge of it be retained and secured by the executor, before distribution of the estate. There is no adequate remedy at law in such case, and the creditor ought not to be left to follow the legatees or resort to the refunding bonds for the share of each. 2 *Story's Eq. Jur.*, § 846; *Johnson* v. *Mills*, 1 *Ves., sen.*, 282.

It is next objected that this indenture, not being executed according to the statute of this state, is void here, and no remedy can be had upon it in our courts. But the well settled rule is, that the validity of a contract depends upon the law of the country where it is made; the *lex loci contractus* governs. The indenture and covenants in it were valid in the state where they were executed, and will be enforced in our courts, if not *contra bonos mores*, or against

the policy of our law. The *personal status* of each individual is governed by the law of actual domicil. And perhaps a question might be raised, whether the complainant, when living in New Jersey, could be held to service under such an indenture; but its covenants, with which alone we have to do, would be binding on both parties in our courts. If, ten years since, a man who had been lawfully sold in Georgia, had been voluntarily brought into New York, his status of slave in Georgia would, by the law of New York, been changed into that of a freeman; but a note for the price, or a covenant of warranty in the bill of sale, valid by the law of Georgia, could have been sued upon in the courts of New York.

It is further objected that the covenants in this indenture on part of the master, are personal, and that the obligation to serve is only to him personally; that the apprentice is not bound to serve his executors or legatees; that neither Voorhees in his life, nor his executors now, can assign the apprentice; and that the covenant to support must end with the correlative obligation to serve, which is the consideration for it.

It is clear, both upon principle and authority, that the obligation to serve is personal, and ends with the death of the master. In England the law has long been so settled, except that by the custom of London, apprentices in the city may be assigned upon the death of the master. But on the other hand, it is held that the covenants in the indenture are independent, and that the covenant to support binds the executors of the master.

In *Rex* v. *Peck*, 1 *Salk.* 66, and 1 *Burns Inst.* 92, *Title Apprentices XI*, it is said that an action might be maintained against executors on covenants to maintain after the death of the master; but this is not the point debated in that case. The order of the Sessions against the executors for support was quashed. And in the recital in the act concerning parish apprentices, 32 *Geo.* 3, *ch.* 57, it is stated that the covenant to maintain, continues after the agreement for service

is at an end by the death of the master, " *or doubts have arisen with respect thereto.*"

In *Winstone* v. *Linn,* 1 *B.* & *Cress.* 460, in *Phillips* v. *Clift,* 4 *Hurlst.* & *Nor.* 168, and *Powers* v. *Ware,* 2 *Pick.* 451, it is held that the covenants in an indenture of apprenticeship are independent, and that a single breach on part of the apprentice, or his inability by sickness to serve, would not discharge the master from his covenant to maintain; but it is intimated that continued wilful absence might. In *The Commonwealth* v. *King,* 4 *S.* & *R.* 109, it is intimated that executors are not liable on a covenant to maintain. The case of *Baxter* v. *Burfield,* 2 *Str.* 1266, has nothing on the point except a reference (evidently misreported, because incorrect) to the case of *Hyde* v. *Dean of Windsor, Cro. Eliz* 552. It is clear that, in general, executors are bound by all covenants of the testator, except such as must be performed by him in person, whether named or not. 1 *Pars. on Con.* (5th ed.) 127; *Platt on Cov.* 454; 2 *Williams on Ex'rs* 1561.

But this is not the question here; but whether, from the nature of the contract, the covenant to support must not be limited to the time of service, and cease when that ends. This is the view taken by Judge Reeve in his treatise on *Domestic Relations, p.* 345. It seems to me that a correct application of the usual rules of construction to such contracts, should limit the contract to support in this way. Else the injustice and absurdity would follow, that upon the death of his master an apprentice having years to serve, could call upon his master's executor for board, clothing, and pocket money, as covenanted, and spend his time in idleness, or in other service; and the estate of an honest mechanic, who left half a dozen apprentices with five years to serve, would be eaten up in their gratuitous support, and his wife and children left penniless; and this too, when he had maintained them during the first unremunerative years of their service. The case in *Salkeld,* which is the only one produced on this point, does not adjudge the point. The court was not called upon to consider it, and is not of sufficient authority for me to consider the law so settled, against what I conceive to be

the correct principles of construction. The principle must be settled at law, and unless the right is so settled, the aid of this court cannot be extended to prevent distribution to protect a doubtful claim.

As to the defence set up in the answer and proof, that the claim is barred by the order of the surrogate to present claims within nine months, under the twenty-second section of the Orphans Court act of 1865, (*Nix. Dig.* 589, § 70 *,) it is sufficient to say that no proof is given that the notice was advertised or set up as required by the act. This is essential to make it a bar. That act requires no refunding bond; and as it protects the executors from all further suits, did the notice appear to have been duly advertised, it would have been a bar to the relief sought by this suit.

Another defence is, that the provision made in the will of the testator, must be deemed a satisfaction of this claim. Besides the melodeon, and the legacy of one thousand dollars when she becomes of age, and of two thousand dollars and one half of the residue at the death of the widow, the interest of the one thousand dollars is left for her support.

This was no doubt intended by him as a provision for the support he had agreed to furnish her, and if adequate, must be taken to be a satisfaction of his obligation to support her. *Van Riper* v. *Van Riper*, 1 *Green's C. R.* 1; 2 *Story's Eq. Jur.*, § 1119. Its adequacy cannot be measured by the usual rule, which is that the legacy must be equal to the debt. Here " the interest may or may not be equal to her support. And as this must be construed to be intended in lieu of his covenant to support her, and by the rule that any person who claims or accepts any benefit under a will must abide by its provisions, it is a case in which the complainant must be put to her election; she must either renounce all the provisions of the will in her favor, or accept of this interest as a satisfaction of her maintenance. No one can elect for her, and this court could not assume or sanction an election, unless it appears for her benefit.

* *Rev., p.* 764, *sec.* 62.

In the first place, the maintenance to be given by this indenture is only such as is to be given to an apprentice. The words of the indenture are " necessary and fit." The education is limited; so much as is *needful* for persons in the ordinary ranks of life. And I shall take it that it must be a support connected with her performing the duties on her part in the indenture, serving on all lawful business. The sixth section of the charter of the society which gives validity to this indenture, directs that it shall be conformable to the laws of New York in regard to the binding out of indigent children, and those laws provide that upon the death of the master his executors may assign the apprentice. 3 *Rev. Stat. N. Y.*, (5th ed.) *p.* 254, §§ 41–2.

And it strikes me that such support, as the complainant is now ten years of age, may for the average of the residue of the term, be provided by the interest of one thousand dollars. At all events, it would not be wise for her to renounce the melodeon and the legacies of three thousand dollars provided, for any excess in the support that could be allowed her out of the estate, over the interest.

The claim set up for the complainant, even if recovered by law, must rest upon a rigid and unrighteous construction of the covenants in the indenture, and is, under the circumstances of the case, an unfair and inequitable one. The testator died worth about ten thousand dollars in clear estate. Besides some trifling specific bequests, he gave his widow the control of six thousand dollars; to the complainant one thousand dollars, and a further contingency in two thousand dollars more, on the death of his widow. The residue he left to his relations. He provided for the complainant what seemed to him, and what really is, a liberal provision for her, in his circumstances and her condition. The attempt is to deprive his relations by blood, by a strict construction of the instrument and a liberal enforcement of its supposed provisions, of all the benefits he provides for them in his will.

Such a construction of this indenture, and such an enforcement of its provisions, would, as soon as known, prevent all

proper persons from accepting any of these unfortunate children.

The views taken of the effect of the covenants in the indenture, and of the legacies to the complainant as a satisfaction of the claim, must compel me to refuse the relief asked for by the bill. The injunction must be dissolved, and the bill dismissed; but under the situation of the complainant, and the circumstances of the case, without costs.