Locander *v.* Lounsbery.

## LOCANDER *vs.* LOUNSBERY.

1. Parol evidence is inadmissible to show that when an agreement was made, the parties agreed to something else, that enlarges or abridges the contract then written.

2. The making of a decree for specific performance, is an exercise of the extraordinary jurisdiction of a court of equity, and where the equities are debatable, the decree will depend in a sense upon discretion, and may be granted or denied, according to the special exigencies and facts of the case.

3. But where a contract is certain and fair in all its parts, and is for an adequate consideration, and the party seeking its enforcement has held himself ready to perform it according to its terms, without default, and has be. n prompt in his application for relief, it is as much a matter of course for courts of equity to decree specific performance of the contract, as it is for a court of law to give damages for a breach of it.

4. An incidental increase in value of the lot agreed to be conveyed, by reason of improvements put upon *other parts* of the tract, of which such lot forms a part—such lot being distinguished from the other part by the vendor himself in making his improvements—affords no ground for assessing upon it a part of the cost of such improvements, under a provision in the contract to pay for *expenses incurred upon it.*

5. Taxes having been paid upon the whole tract together, the vendee will be charged with a proportionate part of them, with interest from the time of their payment.

*Mr. Blake,* for complainant.

*Mr. English* and *Mr. Williamson,* for defendant.

THE VICE-CHANCELLOR.

This suit is by Ulric U. Locander against Phineas P. Lounsbery, to compel the latter to convey to the former a certain " five acre lot" in Cranford, in the county of Union.

In 1866, the parties to the suit were partners in business as physicians in the city of New York. In 1864, a tract of land, known as the Pierson farm, containing about fifty acres, and of which the above five acre lot is a parcel, was bought by them and conveyed to Locander and one Charlotte H. Staples, she taking an undivided part for the benefit of Lounsbery, her brother. In the fall of 1866, Locander was arranging to visit Europe, and agreed to sell to Lounsbery his interest in the business and his interest in the farm. The sale was effected, and a conveyance of the farm duly executed by Locander and Staples to Lounsbery, who gave back to Locander a mortgage on the farm for $8000, to secure his note for that sum, being so much of the price, viz., $10,600, agreed to be paid for the farm and the business. The note and mortgage were dated July 1st, 1867, but were in fact executed and delivered in the previous spring, before Locander

started for Europe, which he did on or about the 4th of May. They were post dated to prevent interest from accruing before the last named date. They were made payable in five years, with interest half yearly.

When the above sale was bargained for, and before it was consummated by conveyance, a verbal agreement existed between Locander and Lounsbery in connection with the transaction, in relation to a possible partnership between them on Locander's return; in relation to quit claims, from time to time, by the latter from his mortgage, of such parts of the farm as Lounsbery might sell, and in relation also, to a refusal or privilege to be given to Locander, of buying back the above five acre lot. The terms of this verbal agreement, or some of them, were reduced to writing by Lounsbery, and the writing signed by himself and Locander. The following is a copy of it:

" It is hereby agreed between P. P. Lounsbery and U. U. Locander, that $1000 on his note and mortgage shall be paid annually, if so desired, by six months notice. It is also agreed that U. U. Locander is to have the refusal of a five acre lot of the Pierson farm in Cranford, N. J., at the bend of the Rahway river, at the rate of $200 per acre; interest, taxes and expenses added until the mortgage is paid; and in case of the sale of any part of the said Pierson farm, mortgaged by P. P. Lounsbery to U. U. Locander, he agrees to give a quit claim on the same, if he is paid at the rate of $200 per acre. It is also agreed that U. U. Locander will not practice medicine in the city of New York, except in equal partnership with said P. P. Lounsbery, and he shall have the privilege of returning as a partner in the medical practice by the payment of $1000 and one-half the expenses of repairs and interest, and rent at 116 Spring street, to said Lounsbery.

" New York, April 16th, 1867.

(Signed)         " PHINEAS P. LOUNSBERY,
                     " ULRIC U. LOCANDER."

The mortgage, to which the above agreement relates, though

dated, as before mentioned, on the 1st of July, 1867, was, in fact, acknowledged on the 20th of April preceding—four days after the date of the agreement itself. On the 1st of the following May, the mortgage and note were delivered, as appears by a written receipt, so that, notwithstanding the differences of dates, there can be no reasonable doubt, from the documents and other proofs in the case, that the agreement of April 16th, 1867, on which the complainant relies, was a material part of the general transaction, and that the right to have the five acre lot reconveyed, in pursuance of the agreement, cannot be regarded as independent of, or separable from the original sale and conveyance, but was a constituent part of the bargain by which that sale and conveyance were made.

Upon Locander's return, he released, from time to time, certain lots at Lounsbery's request, in pursuance of the above agreement, and some time before the filing of his bill, and in or about October, 1868, requested the latter to convey to him the five acre lot, tendering therefor the moneys which the agreement requires. Lounsbery refused to convey, and this suit is now brought for specific performance.

My opinion is that the complainant is plainly entitled to a decree. The defendant sets up in his answer, that when he and Locander signed the agreement, there were other and larger stipulations agreed on between them, which were not inserted in the writing, and he goes on to tell what they were. His defence is an attempt to change and contradict, by parol evidence, the contract in writing, and if the evidence, as taken by the master, were sufficient to sustain the allegations in this respect, made by the answer, it would have been of no avail if objected to by the complainant, because excluded by a familiar and elementary rule, as applicable and as useful in equity as at law. There is nothing to show any accident, fraud, or mistake, by which the writing is defective, or on account of which it can be reformed. Parol evidence is inadmissible to show, that when it was made the parties agreed to something else, that enlarges or abridges the contract then written. But supposing it to be admissible under

the heads of fraud, accident, or mistake, it does not support the defendant's allegations. The proofs establish, to my entire satisfaction, the opposite assertion, and I regard the case on its merits, and on the evidence, as it stands, as a clear one for specific performance.

The suggestion on behalf of the defendant, that this court is not bound, under any circumstances, to decree specific performance, is by no means correct. The making of such decree is undoubtedly an exercise of the extraordinary jurisdiction of the court; and where the equities are debatable, the decree will depend in a sense upon discretion, and may be granted or denied according to the special exigencies and facts of the case. But there are cases where little or no room for discretion exists—where a decree for performance cannot be arbitrarily refused, and seems hardly distinguishable from matter of right.

Enforcing the specific performance of a contract, is an exercise of the extraordinary jurisdiction of the court, resting in sound discretion. *Gariss* v. *Gariss*, 1 *C. E. Green* 82.

But where a contract is certain and fair in all its parts, and is for an adequate consideration, and the party seeking its enforcement has held himself ready to perform it according to its terms, without default on his part, and has been prompt in his application for relief, a court of equity will decree specific performance of the contract, as a matter of course. Under such circumstances, it is as much a matter of course for courts of equity to decree specific performance of the contract, as it is for a court of law to give damages for a breach of it.

The above language is employed by Chancellor Green, on this point, in *Hopper* v. *Hopper*, 1 *C. E. Green* 147, and is warranted by the authorities cited.

By the contract in the present case, the complainant is to pay $200 an acre for the land, and also interest, taxes, and expenses. Under the head of expenses, a question is raised on behalf of the defendant as to whether the five acre lot is not fairly to be charged with a part of the expenses incurred

CASES IN CHANCERY.

by defendant in working, improving, and adorning the other part of the farm, which adjoins the lot of five acres he agreed to convey. I think it clear, from the agreement and from the nature of the case, that no such charge can be made. The five acre lot is on the bend of the river, and was very properly distinguished from the rest of the farm by the defendant himself, in making his improvements. That its value was incidentally increased by the adjoining improvements, can certainly be no legal or reasonable ground for assessing it for a part of their cost. Whatever payments were made by the defendant for work done on the five acre lot, or actually required by it, must be allowed him. The taxes have been paid on the whole farm together. It will therefore be right to charge complainant with a full and proportionate part of them, with interest on such part from the time of being paid by defendant.

It should be referred to a master, to ascertain what are the proper boundaries and description of the land to be conveyed, and also the proper sum to be paid by complainant for consideration money and interest, and also for taxes and expenses and interest on such amounts as the defendant may be shown to have paid.

I shall advise as above.