ROBERT P. BROWN and wife, appellants,

*v.*

THE MUTUAL BENEFIT LIFE INSURANCE COMPANY,
respondent.

</div>

1. The opinions of experts in writing are weaker, in degree of certainty, than the direct evidence of the subscribing witness to a deed, where there is no proof to impugn his veracity.

2. If a party would avoid a mortgage given to secure a loan made in good faith, on the ground of fraud or forgery, he is required to interpose the objection promptly, and not continue to receive the benefit and act under it after he has discovered the existence of the alleged fraud, and until the mortgagee is prejudiced in his proof by the death of material witnesses.

On appeal from a decree of the chancellor, on the advisory opinion of the vice-chancellor, reported in *Mutual Benefit Life Ins. Co.* v. *Brown, 3 Stew. Eq. 193.*

*Mr. Joseph Coult,* for appellants.

*Mr. Cortlandt Parker,* for respondent.

The opinion of the court was delivered by

SCUDDER, J.

On bill for foreclosure of a mortgage executed by Israel H. Morehouse and wife to the complainants, dated September 20th, 1856, to secure the payment of $2,500, on land in the city of Newark, the defendants answer that the mortgagors had no title to the land, nor authority to make the loan and execute the mortgage.

On February 27th, 1852, the defendant Robert P. Brown left Newark for California, where he remained about twelve months; from there, he went to Australia, and returned to Newark, May 16th, 1864. At the time of leaving, he was the owner of the mortgaged premises and other land adjoining, on Walnut street. His wife and two young daughters were left residing in the dwelling-house on the premises, without any means or provision for their support in his absence. He was indebted to his brother-in-law, Israel H. Morehouse, to the amount of $800; and the dwelling-house and lands were subject to a mortgage for $1,400, given by himself and wife to the Newark Savings Institution, dated February 22d, 1851. He sent, from California, to his wife $800; and, while he was in Australia, she received from him $50; but, for nearly ten years, no letters came from him, and his family did not know whether he was living or dead. His wife supported herself and family.

By deed dated September 12th, 1855, recorded September 29th, 1855, Robert P. Brown (by his attorney in fact, Israel H. Morehouse) and Phebe C. Brown, his wife, conveyed a portion of the land on Walnut street to Jehoiakim P. Kelly, for the consideration therein expressed of $792; and, on the same day of recording this deed (September 29th, 1855), $500 of principal were paid on account of the mortgage of the Newark Savings Institution. This payment, with two previous payments of $50 each, on account of the principal, left a balance of $800.

Brown v. Mutual Ben. Life Ins. Co.

On February 4th, 1856, Robert P. Brown (by his attorney in fact, Israel H. Morehouse) and Phebe C. Brown, his wife, conveyed the residue of the lands on Walnut street to Samuel Morehouse; and Samuel Morehouse and wife, by deed dated April 9th, 1856, conveyed the same to Israel H. Morehouse. September 20th, 1856, the mortgage to the complainants was executed, by him, to secure the loan of $2,500; and, on September 26th, 1856, the balance of principal and interest on the mortgage to the Newark Savings Institution was paid, amounting to $821.15; and a large part, or the whole of the residue of the sum thus borrowed, was used in building a cheaper and smaller dwelling-house on the land, to which Mrs. Brown and her daughters moved, and in which the family have since resided. The larger brick dwelling-house has been rented, by them, to others, and they have received the rent.

On February 9th, 1859, Israel H. Morehouse and wife conveyed the premises to Phebe C. Brown, subject to the complainant's mortgage, which she assumed to pay as part of the purchase-money, and no actual consideration was paid by her for such conveyance. Morehouse held the title until he became insolvent, and then retransferred the property to Mrs. Brown. The title still remains in her, and she and her husband are defendants in this action. They deny, in their answer, that Israel H. Morehouse was ever constituted the attorney in fact of Robert P. Brown, and charge that his signature to the letters of attorney, under which Morehouse has acted, is a forgery. These letters, dated February 21st, 1852, giving full power to sell lands, purport to have been signed and sealed by Robert P. Brown, in the presence of Anthony Meeker, a subscribing witness, who, on September 15th, 1855, proved the execution of the same before Stephen R. Hawes, a master in chancery, and they were duly recorded in the clerk's office of Essex county, September 29th, 1855, on the same day that the deed to Jehoiakim P. Kelly was recorded. Meeker, Hawes and Israel H.

Morehouse were all dead, when the testimony in this cause was taken.

Robert P. Brown denies that his genuine signature is subscribed to these letters of attorney, but he also denies, with great earnestness, that he ever signed the bond and mortgage to the Newark Savings Institution, which were executed before he left for California, and upon which one payment of interest, and fifty dollars on account of the principal, were made before that time. He is now an aged man, and, from forgetfulness, interest or other cause, his testimony is unreliable. Mrs. Brown says she had no knowledge of the existence of the power of attorney, until her brother, Israel H. Morehouse, produced it at or about the time the first deed to Kelly was executed, and then supposed it was all right. Experts have been examined, and the weight of their evidence is against the genuineness of the signatures of both Robert P. Brown and the subscribing witness, Meeker. The opinions of experts, however skillful they may be, are weaker in degree of certainty than the direct evidence of the subscribing witness, who has sworn to the genuineness of both signatures, when he proved the execution. There is nothing in the evidence to show that he had any interest or motive to swear falsely, or to impugn his veracity. It is needless, therefore, to consider the further question, discussed in the opinion of the vice-chancellor, whether the signature of Robert P. Brown was not, and might not legally be, subscribed by his authorization, if there be any testimony to warrant such consideration.

But if the doubt, raised by the testimony of the experts, were stronger than it is, to show the signature to the letters of attorney is forged, the equity of the complainants is so great, and the conduct of the defendant, Robert P. Brown, has been such, that this defence should not be available.

There is no question that the complainants loaned the money secured by this mortgage, at the request of Mrs. Brown, and her brother, Israel H. Morehouse, for the bene-

fit of the property and the family of Mr. Brown, when he was absent, and had made no provision for the support of those for whom he was bound to provide. Benjamin C. Miller, the treasurer of the Mutual Life Insurance Company, testifies that he had a conversation with Mrs. Brown, when she came to pay interest on the mortgage. She said it had got some behind, and that her brother had taken the money to build a house for her, for a home for her, and that, under the circumstances, he felt a sympathy and agreed to receive it in installments; and, further, that she made a statement of the absence of her husband, of her desire to get along, and that it was difficult for her to do so and support herself, and to take care of the property.

John R. Weeks, attorney of the company, testifies that he paid the balance of the prior encumbrance on the property held by the Newark Savings Institution, and had it discharged from the record. The facts proved show that the balance of the loan, or the greater part of it, was used in building the smaller house on the land, for the benefit of the family, and that, since his return, Mr. Brown has lived in this house with his family, and has had the advantage of this improvement. The company were vigilant in making searches, and examining the records of title, where nothing indicated the alleged fraud on which the defence is founded. While they may not have technically the right of subrogation to the Newark Savings Institution for the amount paid in satisfaction of their mortgage on the land, because they were in no way interested or bound for the payment, the case presents a strong equity, and, in connection with the further fact that the defendant and his family have since had the benefit of the money loaned in the discharge and improvement of the property which has been their home, it gives strength and significance to the conduct of the defendant, Robert P. Brown, since his return to Newark. He returned in May, 1864, and was soon told, as he admits, that there was a power of attorney, and how it had been used, if he did not know it before. He gave no notice to

these complainants of the alleged fraud in its execution, but, on the contrary, permitted his wife to pay interest on the bond and mortgage held by them, for three years after his return, and, as the payments were made regularly, instead of being delayed, or by installments, as was the case before his return, it is fair to assume that he aided in making such payments.

In May, 1866, the defendants filed a bill in this court to set aside the letter of attorney and subsequent encumbrances on the property. These complainants were not made parties. It is not necessary to use the bill further than to show that such a bill did exist, and that certain facts were in issue between the parties. It need not be used to show the admission of the indebtedness to the complainants, and the validity of their encumbrance on the land, for its admissibility is questioned. See *Boileau* v. *Rutlin*, *2 Exch. 665; 2 Whart. Ev.* §§ *838, 1119; 3 Greenl. Ev.* § *274 h.* We have, however, the evidence of the solicitor of the defendants, who conducted the cause, that these complainants were not made parties in that action, because the defendants admitted the justice of their claim, and agreed that they should be paid because of the help they had received from the loan of the complainants, the removal of the prior encumbrance, the increased value and accommodation of their property. They afterwards paid interest up to May 9th, 1864. They have gained an advantage in conducting their former suit without the opposition of the complainants, whom they thus silenced.

No one is permitted to keep silent when he should speak, and thereby mislead another to his injury. *Gregg* v. *Von Phul, 1 Wall. 274.* These defendants have delayed making their defence until Israel H. Morehouse and Anthony Meeker, the principal witnesses, are dead, and the complainants are at a great disadvantage.

This is a proper case to enforce the rule that, in suits to rescind contracts for fraud, it is the duty of the plaintiffs to put forward their complaint at the earliest possible period.

*Jennings* v. *Broughton, 5 DeG. M. & G. 126.* And if they would avoid the security which has been given in this case, on the ground of fraud, it was incumbent on them to interpose the objection promptly, and not to continue to act under it after they discovered the existence of the alleged fraud. *2 Story's Eq. Juris. § 1551.*

With these strong grounds of equitable reply to the defendants' charge of fraud, the vice-chancellor properly held that they who ask equity should do equity, and required them to produce clear proof of forgery in the letters of attorney, and decided that the evidence was too uncertain to be the basis of a decree against the complainants at this remote period and under the peculiar circumstances of the case.

The decree should be affirmed, with costs.

Decree unanimously affirmed.