TOWN OF KEARNY, complainant,

*v.*

NEW JERSEY SUBURBAN WATER COMPANY et al., defendants.

[Decided September 2d, 1932.]

*Mr. Merritt Lane,* for the complainant.

*Messrs. McCarter & English,* for the defendants.

BACKES, V. C.

The history of this litigation will not be again told. It may be found in *105 N. J. Eq. 368*. The matter was referred to a master to determine what was due the water companies (New Jersey Suburban Water Company and New York and New Jersey Water Company) from the town of Kearny, and his report is now up on exceptions by the water companies.

It will be recalled that up to January 1st, 1923, the water companies obtained their water supply from the East Jersey Water Company (now Passaic Consolidated Water Company) at $56.25 and they furnished it to Kearny and adjoining municipalities at $82.50 per million gallons; that in March, as of January 1st, 1923, the board of public utility commissioners fixed the rate, as between the East Jersey Water Company and the water companies at $78, and the increase, $21.75, was passed on to Kearny. The water companies protested against the increase allowed the East Jersey Water Company, and litigated in the state and federal courts and lost finally, December 10th, 1928. Meantime, Kearny refused to shoulder the increase and the water companies threatened to shut off the water supply as East Jersey Water Company, had previously threatened the water companies to do. Kearny then filed this bill offering to pay what was just and an injunction issued July 2d, 1925, restraining East Jersey Water Company, and the two water companies. The court sent the litigants to the board of public utility commissioners which fixed $99 per million gallons as the rate Kearny should pay the water companies from August 1st, 1928, the commissioners holding that it had not jurisdiction to determine earlier values. Kearny and the water companies have agreed that $99 per million gallons is a fair rate from January 1st, 1923. They have also agreed that the water companies supplied Kearny from January 1st, 1923, to August 1st, 1928, with six billion sixty million seven hundred and ninety-one thousand seven hundred and fifty-seven gallons of water which, multiplied by the $16.50 differential, amounts to $100,303.10. The

amount due on the differential alone is in dispute, Kearny having paid at the old rate *pendente lite*. The master allowed the increased rate from April, 1924, only, which reduced the debt to ................................... $72,289.34
To this he added a charge for water furnished the
 quarter ending December 31st, 1921........ 21,375.94

 $93,665.28
Against this he allowed for overcharge, $69,390.75
For cash paid to the use of the water
 companies ... ............... . 3,000.00
 ——————— $72,390.75

And found there was due . ............. .. $21,274.53

The master allowed $72,289.34 instead of $100,303.10 because he found that the account between the water companies and Kearny had been stated and settled to April 1st, 1924, and he held that the increased rate should begin as of that date and not as of January 1st, 1923. These are the circumstances: The water companies rendered their bills quarterly. The bill for the first quarter of 1923 (March 31st) was submitted at the old rate of $82.50; the next three-quarters of that year (June 30th, September 30th and December 31st) were at the rate of $104.25 and for the first quarter of 1924 (March 31st) again at the old rate of $82.50, and the bills were paid. The finding is unsound as a strictly legal proposition. The bills were quarterly invoices rendered in a running account, which begun years ago and is still unsettled. Especially does it remain unsettled since January 1st, 1923, for when the four installments for 1923 and for the first quarter of 1924 were paid there was a large balance due from previous years and even the five invoices were not paid in the order in which they were rendered, for instance: the invoices for the first two quarters of 1923 (March 31st and June 30th) were not paid until June of the following year and then at the rate of $82.50, whereas the other three were paid within the months of their submission, two of them (September 30th and December 31st) at the increased

rate of $104.25. The whole account is open for correction and adjustment. The complainant attacks it; it demands credit for overcharges for water, for money advanced and for overpayment on the two installments of 1923; in fact correcting and adjusting is what it is seeking and it is the very thing the master has done in his findings and which the court is trying to do at this moment. But this is all beside the question. As an equitable proposition, the master altogether overlooked the equities due by Kearny for the relief it sought, and was granted, upon its tender to do equity, an item of which was, that it would pay such rate as the court would fix, and it prayed the court to determine the rate. Kearny is the supplicant; it cannot escape its equities by resorting to legal niceties. The exception is sustained.

The master allowed to Kearny $69,390.75, overcharged for water. The water companies supplied Kearny, East Newark, Harrison and the Clark Thread Company with water through a single pipe. The East Jersey Water Company furnished the water companies all the water to this pipe, which was meter-measured at the point where the pipe tapped the main of the East Jersey Water Company. The accuracy of this meter measurement is not disputed. The water sold by the water companies to the four consumers was meter-measured at their respective intakes. The water companies billed the four consumers for the years 1916 to 1919, inclusive, for eight hundred and fifty-four million gallons more of water than the East Jersey Water Company supplied to their pipe; and they collected the price, $69,390.75. That they did this knowingly, and fraudulently concealed it, there is not the shadow of a doubt; that some of the water companies' officials were unmindful of the oath in testifying is obvious, and that the books of account of the water companies (public utilities, *quasi*-public bodies) were destroyed, because useless, is highly incriminating. That the volume of water supplied to the three consumers other than Kearny and paid for by them was correctly meter-measured at their intakes is not controverted; and the water companies do not contend that they were victimized. The volume billed to

Kearny during the four years was mostly "estimated;" its meters were most of the time and for long periods out of order, and overcharging resulted from over-estimating. The water companies, protesting their good faith, say that when the meters were out of order, estimates were based on meter readings of corresponding quarters when the meters were in order, but that does not account for "selling" eight hundred and fifty-four million gallons more of water than they bought, nor does it answer the charge of fraudulent retention of the overpayments. The East Jersey Water Company called attention to the overcharges, and, refusing to profit by them, returned its share, $37,002.20, to the water companies; they kept it.

The water companies, like Kearny, also claim an estoppel, an account stated, because, as they argue, the "estimates" were agreed to by Kearny's employe, assigned to take meter readings, and were concurred in by Kearny officially. The answer is simple: The water companies knew and Kearny did not know that the bills were fraudulent. The exception is overruled.

The installment for the quarter yearly water supply to December 31st, 1921, was withheld when the past overcharges came to light. The charge for supply for the quarter, $21,-375.94, was allowed by the master. The water companies claim interest. Kearny rightfully withheld payment. Interest is due Kearny for the balance of the overcharge. It filed no exception on that score and the question is not before us. Exception overruled.

In 1919 Kearny paid to two riparian owners $3,000. It deducted the sum from the first quarterly bill of that year (March 31st) and remitted the balance to the water companies. Years ago when Kearny bought its water supply from the East Jersey Water Company it agreed to exercise its power of condemning riparian rights in behalf of the East Jersey Water Company, the latter to pay the price and to hold the town harmless. East Jersey Water Company had not the right of eminent domain. When the water companies succeeded the East Jersey Company as purveyors to Kearny,

they took over the right and assumed the responsibility. Two riparian owners obtained injunctions against the East Jersey Water Company restraining the diversion of their water rights, but time was given to condemn the rights. Whether Kearny was called upon or how it got into the litigation does not appear, but instead of condemning, it paid each of the suitors $1,500 and deducted the sum from the water companies' account, as it would have had the right to do had the amount been determined in condemnation proceedings. The water companies protested at the time, but they cashed the warrant for the balance of the quarterly dues (April, 1919), and apparently acquiesced, for thereafter quarterly bills were regularly rendered without referring to the item; and the item slept until it was resurrected in 1930 by an amendment to the counter-claim in this suit. In 1924 the water companies sued Kearny in the law courts for water supplied since 1919 and it filed its counterclaim in this cause for the same items, but no mention was made of the $3,000; at the hearing before the master the charge was withdrawn upon the assurance of the East Jersey Water Company to reimburse the water companies, and it was reinstated when the assurance was withdrawn. The issue is really one between the East Jersey Company and the water companies and explains the latter's silence for eleven years. The compromise made by Kearny with the two riparian owners is not shown to be more than they would have recovered in condemnation nor that it was not an advantageous settlement of the litigation which, if successful, threatened Kearny's water supply. Exception overruled.

The question of interest on the balance found by the master to be due the water companies was settled in an earlier opinion (*Kearny* v. *New Jersey Suburban Water Co.*, 110 *N. J. Eq. 214; 159 Atl. Rep. 520*). Exception overruled.