Complainants invoke the harsh remedy of strict foreclosure. They ground their claim to this remedy upon legal title to land devised to them by their uncle, Michael Patsourakos, and upon an assignment of a mortgage on the same land made to them by the executor of his estate. It is frankly conceded by complainants that they chose this form of proceeding in order to nullify, if possible, a written lease and option of purchase on the property, given by their uncle to the defendant Donatos Kolioutos. Complainants also frankly admit that Mr. Kolioutos, who resides in the premises and there operates a restaurant business, has fully complied with the terms of that contract.
Prior to February 14th, 1940, Michael Patsourakos had conducted a restaurant in the property with which we are particularly concerned, 1806 Broadway, Camden, New Jersey. On that day he leased the premises to Mr. Kolioutos, with all the restaurant fixtures and equipment, for a term of ten years from the 1st day of March, 1940, with a covenant for peaceable possession and quiet enjoyment. February 17th, 1940, a supplemental written agreement was made between the parties giving to Mr. Kolioutos an option of purchase for $10,000 at any time within the ten-year period. Then, on March 11th, 1940, Mr. Patsourakos executed the will under which complainants claim title. September 1st, 1941, a final written agreement was made between Mr. Patsourakos and Mr. Kolioutos whereby the premises were leased to the latter for a term of ten years from September 1st, 1941, and he was *Page 89 
given an option to purchase for $10,000, upon ten days' notice, at the expiration of the ten-year period. This contract also provided that Mr. Kolioutos should pay Mr. Patsourakos $50 each month for personal services to be rendered and that, over the period of ten years covered by the lease, the parties should operate the restaurant business as partners and share profits or losses equally. In addition, the agreement provided that in the event of the death of either party during the ten-year period, the survivor would be obligated to pay to the heirs of the deceased partner $50 per month, and whether the surviving partner continued to operate the business or not. This agreement also concluded with a covenant, on the part of Mr. Patsourakos, that Mr. Kolioutos, on paying the monthly rental and performing the covenants, should have peaceable possession and quiet enjoyment of the premises.
The mortgage in question had been placed upon the land by Mr. Patsourakos and others and it remained unsatisfied when the first lease and the option of purchase were executed. After Mr. Patsourakos made his will giving this and the adjoining property, and everything else he possessed to the complainants, he paid to the mortgagee the amount due on the mortgage and received the bond, and the mortgage marked for cancellation. When the final agreement was about to be executed, Mr. Kolioutos inquired as to any possible mortgage on the premises and was assured by Mr. Patsourakos that the mortgage had been satisfied. However, the fact that the mortgage had not then been cancelled of record is unimportant to a determination of the rights of Mr. Kolioutos. The rule in New Jersey is that an option of purchase of land includes an assurance that a conveyance in fee will be made, unless it appears that the parties intended to contract on the basis of a lesser estate, and "amounts to an undertaking to convey a complete title in fee-simple, free and clear of encumbrances." Skinner v. Christie, 52 N.J. Eq. 720;29 Atl. Rep. 772. See, also, Locander v. Lounsbery, 24 N.J. Eq. 417;affirmed, sub nom. Lounsbery v. Locander, 25 N.J. Eq. 554.
The testimony of Mr. Kolioutos and the amount fixed by the parties as the consideration for the sale support the legal *Page 90 
implication which arose from the language of the contract. In the report of Mr. Patsourakos, made to the Transfer Inheritance Tax Bureau in January, 1939, upon the estate of his brother James, he declared that he and his deceased brother owned these premises and premises 1808 Broadway; that a mortgage of $7,000 stood against 1806 Broadway, and a mortgage of $5,000 against 1808 Broadway, and that he estimated the equity in each to be the same, $3,500.
Complainants suggest that the option was given without consideration. Not so. Where an option is contained in a lease of premises, payment of rent is applicable as consideration for the agreement to convey at the named price. McCormick v. Stephany,61 N.J. Eq. 208, 217; 48 Atl. Rep. 25. The option in the present case constituted a complete purchase of a right to have a conveyance of title, free and clear of encumbrances, upon payment of $10,000, if Mr. Kolioutos should choose to buy upon notice and at the time fixed. Behr v. Hurwitz, 90 N.J. Eq. 110;105 Atl. Rep. 486.
Michael Patsourakos died September 28th, 1941. On October 20th, 1941, the executor of his estate executed and delivered to complainants a written assignment, purporting to assign to them the $7,000 bond and mortgage on 1806 Broadway. There had never been a written assignment of this mortgage to Mr. Patsourakos. Complainants assert, however, that the assignment to them was proper and valid because their deceased uncle had wrongfully used funds which he had declared he would hold in trust for them, to satisfy the mortgage. The essential facts may be briefly stated: Mr. Patsourakos was the named beneficiary in a policy of $10,000 on the life of his brother James, the father of complainants; upon the death of James, December 1st, 1938, the amount due under the policy, $9,757.10, became payable to Mr. Patsourakos; three checks were drawn to his order, viz., June 2d 1939, $420; July 1st, 1939, $2,337.10; April 2d 1940, $7,000; between July 5th, 1939, and August 26th, 1941, he paid $916.56 in taxes and water rents on this property; April 6th, 1940, he called the owner of the mortgage to the office of his attorney and there endorsed the insurance check for $7,000 over to him and received the bond and *Page 91 
mortgage; an authorization to cancel the mortgage, dated that day, was stamped upon it and signed by the mortgagee; Mr. Patsourakos left the bond and mortgage in the office of his attorney and there it remained until final hearing in this cause. The evidence established that Mr. Patsourakos, following the death of his brother, declared that he recognized a trust to the extent of the insurance, $9,757.10, in favor of his nephews, the complainants. Following the death of their father, he paid to them $20 each month, stating that it represented interest on the insurance money; in February or March of 1940 he began to pay complainants $50 each month and he continued to make such payments to them until his death.
So far as the evidence discloses, the declaration of trust in favor of complainants was a voluntary act on the part of Mr. Patsourakos, and I am not persuaded that he intended any wrongdoing when he used a part of the insurance money, which was payable to him, to satisfy the mortgage. Complainants were his next of kin and he intended to give and did in fact give them all of his estate. He was receiving from the insurance company only three and one-half per cent. interest and he was paying six per cent. interest on the mortgage; he consulted with the elder of the complainants, Nicholas Patsourakos, and received his approval of the transaction, and, after satisfying the mortgage, paid to complainants a monthly sum equivalent to six per cent. on the sum of $10,000; in giving Mr. Kolioutos an option of purchase, he fixed $10,000 as the price to be paid and obligated Mr. Kolioutos to continue to pay complainants $50 each month for ten years. Mr. Patsourakos, therefore, had assured, as certainly as he could, payment to complainants of $10,000, and payment of six per cent. interest on that sum until it was received. In addition, he devised the adjoining property to complainants and gave to them the balance of his estate.
When Mr. Patsourakos died two courses of action were open to complainants. They could insist upon their rights as creditors of his estate and could move to make available to them the security of the mortgage and of the tax liens, or, they could elect to take under the will, succeeding to the *Page 92 
interest of their uncle in this and the adjoining property and taking the balance of his estate. Complainants chose to take the entire estate of their uncle under his will, but also seek to claim as creditors and, by branding their uncle an unfaithful trustee and utilizing the mortgage security and the unusual remedy of strict foreclosure, to free this property of the existing lease, the option of purchase and the covenant for peaceable possession, created by solemn contract of their benefactor. A court of equity should not lend itself to the accomplishment of any such inequitable purpose. Chancellor Green, in the early case of Van Duyne v. Van Duyne, 14 N.J. Eq. 49,
declared: "It is a maxim in a court of equity not to permit the same person to hold under and against a will." The Chancellor added: "The rule in equity is well settled. A man shall not take any beneficial interest under a will, and at the same time set up any right or claim of his own, even if otherwise legal and well grounded, which shall defeat or in any way prevent the full effect and operation of every part of the will." Chancellor Dickerson had declared, in Stevenson v. Brown, 4 N.J. Eq. 503: "The settled principle in equity is, that he who accepts a benefit under a will, must conform to all its provisions, and renounce every right inconsistent with them." In Yawger v.Yawger, 37 N.J. Eq. 216, 218, Vice-Chancellor Bird characterized this as "a very reasonable and reliable principle." See, also, Bird v. Hawkins, 58 N.J. Eq. 229, 246;42 Atl. Rep. 588.
Complainants accepted from their uncle monthly payments representing more than six per cent. interest on the trust fund, and they have been accepting like payments from Mr. Kolioutos. They reach out to take the entire estate of their uncle but are not willing to recognize the obligations he assumed with respect to this particular property. Nor, have complainants offered to cancel the obligation of Mr. Kolioutos to continue to pay them $50 each month for the next nine years. The application of the maxim that those who seek equity must do equity, is not limited to any particular class of cases; it is applied whenever necessary to promote justice. Mutual Benefit Life Insurance Co.
v. Brown, 30 N.J. Eq. 193; affirmed, sub nom. Brown v. MutualBenefit Life Insurance *Page 93 Co., 32 N.J. Eq. 809. See, also, Reeves v. Cooper, 12 N.J. Eq. 223; General Proprietors of Eastern Division of New Jersey
v. Force's Executors, 72 N.J. Eq. 56; 68 Atl. Rep. 914; Gillies
v. Dyer, 93 N.J. Eq. 348; 116 Atl. Rep. 704; affirmed, 93 N.J. Eq. 635; 117 Atl. Rep. 611; Baader v. Mascellino, 113 N.J. Eq. 189; 166 Atl. Rep. 466; reversed, 116 N.J. Eq. 126;172 Atl. Rep. 549; Jersey Acres, Inc., v. City of Paterson, 122 N.J. Eq. 423;194 Atl. Rep. 283. Vice-Chancellor Backes, in Kearny v. NewJersey Suburban Water Co., 10 N.J. Mis. R. 1015;162 Atl. Rep. 126; affirmed, 117 N.J. Eq. 474; 176 Atl. Rep. 556, points out that a complainant, seeking equity, "cannot escape its equities by resorting to legal niceties." The phrase is apt to the situation now before me.
Another established rule of equity stands as a bar to the accomplishment of complainants' inequitable purpose. One who accepts a devise must take it cum onere. Stevenson v. Brown,supra; Van Duyne v. Van Duyne, supra; Yawger v. Yawger,supra; Pratt v. Douglas, 38 N.J. Eq. 516; Young v. Young,51 N.J. Eq. 491; 27 Atl. Rep. 627; Bird v. Hawkins, supra; Ashby
v. Ashby, 59 N.J. Eq. 547; 46 Atl. Rep. 522; Jenkinson v. NewYork Finance Co., 79 N.J. Eq. 247; 82 Atl. Rep. 36; Job HainesHome for Aged People v. Keene, 87 N.J. Eq. 509;101 Atl. Rep. 512. It has been established that the contract entered into by Mr. Patsourakos and Mr. Kolioutos is a valid contract. If and when the option to purchase is accepted in accordance with that contract, the obligation of Mr. Patsourakos becomes absolute and not only binding upon him but upon his representatives. Then an enforceable obligation would arise and the contract ought to be performed. Then equity would consider and treat it as performed. Upon fulfillment by Mr. Kolioutos of his contract obligations, and until the right to purchase may be exercised, this court should preserve the contract rights of Mr. Kolioutos and assure to him peaceable possession.
The evidence before me makes it reasonably clear that, not only may the obligations of decedent to Mr. Kolioutos be fully discharged and the debt due complainants be fully satisfied *Page 94 
out of his estate, but that, in addition, complainants will also have the property 1808 Broadway, Camden, New Jersey. I have no doubt but that Mr. Patsourakos entered into his several agreements with Mr. Kolioutos in good faith and that, until his death, he intended and expected to fully discharge the obligations he assumed by those contracts. I feel certain, also, that Mr. Patsourakos intended, by the provisions of his will, to satisfy any claim which his nephews might have, as creditors, against him; he had declared the trust before the will was executed; he had made personal use of some of the trust funds and had expressed an intention of using the balance to satisfy the mortgage; and, the customary clause for payment of debts by the executor was not included in the instrument.
In Talbott v. Duke of Shrewsbury, Prec. in Ch. 394; 25English Reprint 62, the Master of the Rolls formulated and stated a rule which has, ever since, been accepted in equity: "If one, being in debt to another in a sum of money, does, by his will, give his creditor a sum of money as great as or greater than the debt, without taking any notice at all of the debt, this shall, nevertheless be in satisfaction of the debt, so that the creditor shall not have both the debt and the legacy." This rule was approved in New Jersey as early as the year 1838; Chancellor Pennington, in Van Riper v. Van Riper's Executors, 2 N.J. Eq. 1,3, said: "The general principle is well settled, that a legacy will be presumed to be a satisfaction of a demand against the testator. This is the rule where there are no circumstances in the case, or upon the face of the will, showing a different intention. The rule is founded on the presumption that such was the intention of the testator." See, also, Petrie v. Voorhees'Executor, 18 N.J. Eq. 285; Russell v. Minton, 42 N.J. Eq. 123,126; Heisler v. Sharp, 44 N.J. Eq. 167; 14 Atl. Rep. 624;affirmed (45 N.J. Eq. 367; 19 Atl. Rep. 621); Frost v.Blackwell, 82 N.J. Eq. 625; 90 Atl. Rep. 306; reversing82 N.J. Eq. 184; 88 Atl. Rep. 176; Adams v. Adams, 55 N.J. Eq. 42;35 Atl. Rep. 827; L.R.A. 1915B, note, pp. 1156 et seq.
Any consideration of the lease and option, and the circumstances *Page 95 
surrounding their execution, would be incomplete unless particular note were taken of the fact that both before and after the execution of his will Mr. Patsourakos covenanted that Mr. Kolioutos should enjoy peaceable and quiet possession of this property. Such a covenant may not be ignored in this court.Tully v. Taylor (Court of Errors and Appeals), 84 N.J. Eq. 459; 94 Atl. Rep. 572, and see Shore 5c to $1.00 Stores, Inc.,
v. Jacob Ellis Realties, Inc., 131 N.J. Eq. 499; 26 Atl. Rep.
2d 66. Complainants may not take this and other property under the will of their uncle and escape the effect of his covenant.
The remedy of strict foreclosure was developed in England to ameliorate the more severe rule, previously in force, that absolute title and a right to immediate possession passed by mortgage and default. Subsequently, foreclosure by sale was initiated and now, in many states of the United States, the exclusive foreclosure remedy is by sale. In New Jersey, however, while foreclosure is ordinarily had by sale, the remedy of strict foreclosure is permitted in certain and exceptional circumstances — where necessary to subserve equity and justice. The only instances, nevertheless, in which strict foreclosure has been held to be the appropriate remedy in this state are, (1) where, during the customary foreclosure by judicial sale or a conveyance by the mortgagor, equitable estates have become united in the mortgagee, who is also in possession under his legal title, and some outstanding junior interest has not, by reason of pure inadvertence not aggravated by bad faith, been barred by the decree; (2) where the mortgage has been given for the entire purchase price, and the value of the land does not exceed the amount of the mortgage; (3) where the mortgage is in the form of an absolute deed of conveyance, without written defeasance and the grantee-mortgagee is in possession, although foreclosure by sale is usually deemed to be the remedy better designed to safeguard the essential interest of the parties; and (4) where a vendee has failed to make the payments stipulated in a contract for the sale of land. Sears-Roebuck Co. v. Camp (Court ofErrors and Appeals), 124 N.J. Eq. 403, 409; 1 Atl. Rep. 2d425; 118 A.L.R. 762. See, also, Eldridge *Page 96 
v. Eldridge, 14 N.J. Eq. 195; Benedict v. Mortimer,8 Atl. Rep. 515; Parker v. Child, 25 N.J. Eq. 41; Pettingill v.Hubbell, 53 N.J. Eq. 584; 32 Atl. Rep. 76; Indiana InvestmentCo. v. Evens, 121 N.J. Eq. 72; 187 Atl. Rep. 158; Mesiavech v.Newman, 120 N.J. Eq. 192; 184 Atl. Rep. 538; Shepard v.Barrett, 84 N.J. Eq. 408; 93 Atl. Rep. 852; 19 R.C.L. 516 ¶ 316,c.; 37 Am. Jur. 32 ¶ 530, c.
Mr. Kolioutos has now, either alone or with Michael Patsourakos, operated the restaurant business at 1806 Broadway, for two years and four months. If complainants were to succeed in this suit, he and his business would be at their mercy. If he did not meet their terms for continued occupancy of the premises (provided they would permit him to continue at all) his business and the good-will he has established would be destroyed. I am convinced that, considering the mutual rights and obligations of the parties, a strict foreclosure in this instance is not appropriate and should not be permitted.
For the reasons I have stated, I shall advise a decree dismissing the bill of complaint. *Page 97