## LORD AND ANOTHER *vs.* LORD AND OTHERS.

A testator, by his will, directed all his just debts and personal expenses to be paid, out of such personal estate as he should not thereafter specifically dispose of; and, in case of a deficiency of such estate, appropriated certain real estate for that purpose. He then proceeded to dispose of all the remainder of his estate, making his nephew W, one of the devisees and legatees, and added to his will, the following clause : " I will and direct, that my nephew W, pay S, all the money which is due to her, upon the writing," &c. The real and personal estate appropriated, being insufficient for the payment of all the testator's debts ; it was held, that this was a direction to W, to pay S, individually, from his share of the estate, and on his own account, and not as executor.

THIS was a case, submitted to the superior court for New London county, upon a statement of facts, agreed to by the parties, under the statute of 1848, (Stat. 1849, pp. 109, 110 ;) and was reserved for the advice of this court.

The case embraced the following facts :

On the 15th day of February, 1852, William Lord, of Lyme, died, having made his last will and testament, which was subsequently duly proved and approved.

The first provision of said will is as follows :

" I will, order, and direct, that all my just debts and funeral expenses be paid, out of my personal estate, as I shall not hereafter specifically dispose of; such as my neat stock, farming utensils, which, if not sufficient to pay the same, then the thirty-five shares of my Paterson railroad stock, I will direct sold, to pay."

Said will then contained a devise to Nancy, the testator's wife, of the use and improvement, during her widowhood, of his dwelling-house, garden, a lot of land adjacent, and farm buildings ; also, the privilege and right of using " as much fruit for herself as she may need, growing on the farm, and shall have convenient pasturing for one cow, and one horse, and sufficient English hay for the same, and stabling for the appropriate seasons, and shall have firewood sufficient for two fires, all cut and carted to her house, in proper season, and cut suitable for the fire, and piled in the wood-house ; also, twenty bushels of Indian corn, twenty bushels of oats, ten bushels of rye, twenty bushels of potatoes, three hundred pounds of good fat beef, and half of the rent of the shad fishery of my half of Goose Island, (so called,) all to be delivered to her, at her house, of good quality and in good order, on or before the 25th day of December, of each and every year, during the time aforesaid, by my nephew, William M. Lord, as a condition of the devise of the adjoining farm to him, or by whomsoever shall be in possession of said farm for the time being ; it being made a special charge on said farm, and on every part of the same, for the time being, and to remain so, to all intents and purposes, so long as my said wife shall be entitled to receive the same."

The testator also bequeathed to said Nancy, the use, so long as she should remain his widow, of certain articles of

Lord and another *v.* Lord and others.

personal property, and his household furniture, and the remainder thereof, to his adopted daughter, Sarah A. L. Holdridge.

He then bequeathed to said William M. and his executors, one hundred shares of the capital stock of the Washington Bank, in trust, to pay the dividends thereon to said Sarah, for her sole and, separate use, during her life ; and, after her decease, to transfer the same to the heirs of her body, to be equally divided between them ; and, in default of such heirs, to be transferred to, and equally divided between, the children of the said William M. He then devised and bequeathed to said William M. and his executors, forty-two shares of Stonington bank stock,—fifteen shares of New London bank stock, in trust, to pay the dividends thereon to the testator's wife, during her widowhood, and thereafter to surrender one-half of said bank stock to the exclusive use and disposal of said Sarah, and one-half thereof to the children of said William M. ; also, two farms and other real estate, subject to certain reservations and charges, in favor of his mother-in-law, Phoebe Lord, during her life, and of the sisters of the devisee, while sole and unmarried ; also, a small piece of land, absolutely, and in fee. He also devised to said Nancy, the use of a certain house, with the adjacent land, during her widowhood, and the remainder to the said Sarah A. and her heirs forever.

Said will then proceeded as follows :

" I will further direct my nephew, William M. Lord, to sell my Starr house, and lot, if there is not sufficient property left of what I have directed to be sold, to pay all my debts and legacies against my estate, and funeral expenses ; and, whereas I gave to my brother Enoch Lord, now deceased, an obligation, dated April 26th, 1834, promising to pay to him, during life, the interest that should arise, and the principal, which was one thousand dollars, which should be unpaid after his decease, to his surviving daughters, in

such proportions to each, as my judgment might direct, I will, order, and direct, that my executors shall pay such balance as may be unpaid on said obligation, to Phoebe Lucas, Sarah Marvin, Nancy Lord, Betsey J. Lord, Esther Ann Lord, Eunice Peugh, all daughters of my brother, Enoch Lord, deceased, to each and every one alike, after deducting from the respective payments, such sums as I have advanced to them, and charged in account on my book.

" My will is, that my nephew, William M. Lord, erect a fence, provided it shall not be done before my decease, around the monument of my first wife, to enclose a yard, twelve by eight feet, the fence to be constructed of stone posts, six in number, with three round iron bolts, to go around the yard, holes to be drilled through the posts, to have the bolts pass through the same, with an iron ring enclosed on one end of each bolt, and a screw cut on the other end, with a cap nut to hold it fast ; the bolts to be painted once in five years, with black varnish or black oil paint. My will further is, that my nephew, William M. Lord, shall continue, during his life, to keep the above fence in repair, and the monuments which may be enclosed within said fence, the monuments to be kept free from moss, and well lettered, by my said nephew, William M. Lord, and to all who may be in possession or own the same farms, after his decease, forever.

" I give and bequeath to our adopted daughter, Sarah Ann Lord Holdridge, all the printed books which I own, at my decease, to her, her heirs and assigns forever.

" My will is, that my executors pay to Eliza L. Parsons, Sally Wing, Georgianna Parsons, daughters of Eliza L. Parsons, and Mary H. Howe, fifty dollars each.

" I will, order, and direct, that my nephew, William M. Lord, pay Sarah L. Marshall, now residing in Nantes, in France, all the money which is due to her, upon the writing which she holds against me, deducting from the same, such sums as I have charged to her, upon my book. I will, order and direct, my executors, to pay Margaret Salter, two hun-

dred dollars. My will further is, that all the moneys which are in the possession of Walter Mead, Esq., now in New York, whenever the same shall be collected, shall be equally divided, betwixt my beloved wife, Nancy Lord, our adopted daughter, Sarah Ann Lord Holdridge, and my nephew, William M. Lord.

" I will, order and direct, that my houses which were in possession of Daniel Smith, and the lot of land on which they stand, and which were mortgaged to William W. Rodman, and sold to me, by said Rodman, and which I foreclosed against said Smith, and have got possession of, by a foreclosure and decree of our court, and I have given to said Rodman, a writing for, to quitclaim to him the title to said property, whenever said Rodman shall pay to me the money for which the above property was pledged to me, or will consent to have the same sold at auction, or any other way, so that the money due me may be paid, so that my executors can have the same ; then I direct them to pay the same to the daughters of my brother Enoch Lord and brother Joseph Lord, deceased, equally between them, share and share alike. I will, order, and direct, that my executors erect a marble monument near the monument which stands over my first wife, as their judgment may direct, after my decease and burial, within two years.

" I give and bequeath the residue of my estate to the daughters of my brothers, Joseph and Enoch Lord, both now deceased, if not already above disposed of, to them equally, share and share alike.

" I constitute and appoint my beloved wife, Nancy Lord, and William M. Lord, to be executors of this my last will and testament ; hereby revoking all other and former wills, by me, at any time heretofore made."

Said William M. accepted the office of executor, but said Nancy declined said trust. Between the execution of said will, and the testator's death, his personal property became considerably lessened, especially by the advancement of

about $2,000, to Sarah A. L. Holdridge, upon her marriage to Henry B. Noyes, and by a transfer to his wife, of the Paterson railroad stock, mentioned in the will, which was valued at about $1,700.

His real and personal estate was inventoried at twenty-two thousand three hundred and five dollars and seventeen cents.

At or about the time of executing his will, he executed a deed of gift, of certain real estate, in Stonington, of the value of about $17,000, in favor of William M. Lord, which deed was left with the will, to be delivered, at the testator's decease : it was so delivered, and took effect.

During the interval, between the execution of the will, and the death of the testator, his indebtedness was considerably increased, especially by the sum of $1,050, allowed by the commissioners upon the estate, to George W. Lord. The debts against the estate, allowed by the commissioners, amounted to $5,504.23.

The debts, expenses and losses, were about four thousand dollars, over and above the amount of the real estate, appropriated to their payment, and the personal estate not specifically bequeathed.

It was claimed by the said Nancy Lord, and the said Sarah A., that the debt due to Mrs. Marshall, should be paid by the said Wm. M., from his own property, and the balance of the deficiency, if any, from the real and personal estate bequeathed and devised, in ratable proportions. Said William M., and other devisees, claimed, that such deficiency should be paid by the sale of so much as might be necessary, of the bank stock and other personal property bequeathed as aforesaid, in rateable proportions.

*McCurdy* and *Chadwick,* for Wm. M. Lord and others.

*Ingham,* for Nancy Lord and another.

ELLSWORTH, J. In the settlement of this estate, a ques-

tion is raised between the devisees, how the balance of $4,000 shall be provided for,—as the executors have applied all the property, they were directed to apply, and nothing is left, but property which is specifically devised : one party contending it shall be paid exclusively out of the personal estate which is specifically devised, and the other, out of the personal and real, equally.

There is no question, that, as a general principle of law, personal property must be taken for debts, before real, and that, where it is all specifically devised, the same rule applies to it, as a class, *i. e.*, the personal before the real. *Brainard* v. *Cowdrey*, 16 Conn. R., 502. 2 Jarman, 546. 1 2 Eq. Ca. Ab., 459. If there was nothing more in the case than this, we should hold with those who contend, that all the personal bequests must be taken before the land ; but, we do not hold, that the personal property which is given to the widow, in lieu of dower, is subject to this rule of contribution, and to that extent we might make an exception ; for it is said in the books, she takes as a purchaser, and, therefore, is not subject to a contribution ; and we are not certain, but our statute, p. 277, gives strength to this idea. But, this point we do not mean, at this time, absolutely to settle ; for it was not much discussed at the bar, nor indeed, of necessity, is it presented in the question raised. Of course, we leave this point as the case leaves it, and will only refer the counsel, if the point hereafter becomes important, to the following cases. 6 Met., 54. 6 Paige, 305. 6 Gill, 120. Amb., 245. 1 Rop. on Leg., 297, and 1 Russ., 543.

The chief dispute has been, whether the debt due from the testator, to Mrs. Marshall, of $1,996.50, as since ascertained, is to be paid by William M. Lord, on his own account, or as executor. If the former, then this debt is a lien on his specific share, and he must pay it and not charge the pay-

ment to the estate ; if the latter, he is entitled to an order to sell, and may charge the payment to the estate.

This is purely á question of construction, and must be decided upon an examination of the will, in all its parts. This we have done, as well as we are able. The will was drawn by the testator himself, and, as it would seem, from time to time, as he thought of the matter, very immethodically, and so confused, as that it can not easily and satisfactorily be interpreted, on the point in dispute : and we are not, by any means, certain, that, after all, we interpret the will, in conformity to the testator's intention.

In the first part of the will, the testator directs, that *all his debts and funeral expenses shall be paid.* This duty was imposed upon his two executors, and as an expression of intention, it shows the testator supposed his *executors* would pay his debts : for *this* duty we should not naturally look to any subsequent part of the will, for further intention ; nor do we, on examination, find any further intention, except an order to his *executors,* to pay a debt, (if it be one,) to the heirs of his brother, Enoch Lord. But this is not an ordinary debt, but one which requires some specific directions. With this qualification, the first clause in the will is the only order to the *executors,* to pay *debts.*

Now, where this debt, due Mrs. Marshall, is spoken of, further on in the will, the language is peculiar and significant. "*I will, order and direct, that my nephew, William M. Lord, pay Sarah L. Marshall,* all the money which is due to her upon the writing," &c. On its face, it is clearly a direction to his nephew William M. Lord, by *name,* not as executor, (and there were two executors, in the will,) to pay what remained of this debt. So we construe the will, following the language in its natural and obvious import. We do not feel authorized to do otherwise ; nor do we think the testator himself intended otherwise. He had, before this clause in the will, imposed *private* charges on his nephew, especially in relation to the annual support of the testator's

widow, and the preservation of his grave-yard, and fence about it ; and we must believe he intended to extend *this* personal duty to William M. Lord, who was a liberal participant in the bounty of his uncle.

We find, too, in the paragraph next preceding the one in question, the *executors* are mentioned, and directed to pay certain legacies, as executors ; so, in the paragraph next following the one in question, the *executors* are, as such, directed to discharge a duty. Now, when, in this intermediate paragraph, he directs *his nephew, William M. Lord*, to pay a certain claim, we believe, he had in his mind, a distinction between *executors* and his *nephew*, William M. Lord. This is the result to which we have come, after much comparison of our views, and with some considerable confidence of the correctness of our decision.

We answer, then, the questions put to us : *first*, that the personal property is first liable; and *secondly*, the debt due Mrs. Marshall, is to be paid by William M. Lord, on his own account, and not as executor.

In this opinion the other judges concurred.