Bird v. Hawkins.

## MARY E. BIRD

*v.*

## ELLA H. P. HAWKINS et al.

[Filed March 1st, 1899.]

1. The jurisdiction of the court of chancery and of the orphans court over an accounting by executors, &c., is concurrent. The assumption of jurisdiction by the orphans court does not exclude the court of chancery from entertaining a suit touching a pending accounting, but this court will not interfere with the exercise of the jurisdiction by the orphans court unless for special cause shown.

2. A residuary legatee may sustain a bill for an accounting against the executor of the will.

3. Where, by his will, the testator gives two properties as one entire devise, subject to the performance of certain-named conditions, the devisee can only accept as an entirety in the manner and upon the terms named in the will—that is, he must take both properties, performing all the conditions, or refuse both properties; he cannot accept a part only of the entire devise and refuse to perform the testator's requirements.

4. Equity will not enforce a forfeiture of a devise for non-performance of conditions subsequent, but will, if a devisee accepts, compel the performance of the conditions, or if that be inequitable or impossible, will award compensation in damages for the breach of conditions if that remedy can be made adequate.

5. A devisee who accepts a devise is bound to perform the requirements of the will. "He cannot disappoint a will under which he takes a benefit."

6. One who has accepted a devise and thereby became bound to perform conditions cannot afterwards, by disclaiming acceptance of the estate devised,. avoid the performance of the conditions.

7. There must be an express direction or necessary implication in a will in order to exonerate the general personal estate from being applied to the payment of the debts or to postpone its primary use for that purpose.

On bill, answer and proofs.

Thomas H. Hawkins in his lifetime resided in Vineland, New Jersey, where he owned considerable real and personal property. He died in February, 1890, leaving him surviving his only child and sole heir-at-law the complainant, Mary E. Bird, and his second wife and widow, Ella H. P. Hawkins. The decedent had made and published his will, whereof he appointed his widow executrix, and she assumed the burthen of its execution and proved it before the Cumberland county surrogate in February, 1890. The defendants are the widow and the legatees and devisees interested under the will, which is in these words:

"Know all men by these presents that I, Thomas H. Hawkins, of Vineland, in the State of New Jersey, do make and declare this to be my will & testament.

"*First.* I will & bequeath to my wife, Mrs. Ella H. P. Hawkins, the home property on which we now reside, consisting of the house & 3 lots located at the southwest corner of Sixth & Grape streets, Vineland, together with & including all the furniture, fixtures, pictures & appurtenances upon, in & belonging to said property including small house on N. W. corner of lot fronting on Grape street.

"I do also commit & intrust to my wife, Mrs. Ella H. P. Hawkins, the property known as the post office building, or block located on Landis avenue No. —, Vineland, New Jersey:

"Together with two (2) small houses located on the south side of Grape street between Sixth st. & the Boulevard, Vineland including one lot of land upon which they stand, she to receive & enjoy all rents therefrom so long as she may live, provided & upon condition that she shall within five years of my decease, free said properties from all indebtedness & mortgages that may be against them at the time of my death. Upon the death of my wife the aforesaid post office property shall go to my daughter Mary Elizabeth Hawkins, to be held by her in trust so long as she may live: she to have the right to will & bequeath the same to her husband & heirs, if such heirs exist at the time of her death.

Bird v. Hawkins.

" In case of the death of both my wife & my daughter & the absence of heirs to my daughter as specified before, the post office property shall go to my brothers & sisters or their heirs.

" If my wife shall die before my daughter, then the two houses & one lot before named, located on the south side of Grape st., between Sixth st. and the Boulevard, shall fall to my daughter Mary E. Hawkins, to be held & conveyed by her as she desire.

"*Second.* I do will & bequeath to my daughter Mary E. Hawkins, the house & property located at No. 65 Marion st., East Boston, Mass. And after five years she may have the right to sell or convey the same.

" I do also intrust to her the property on Landis avenue, Vineland, between 6th & 7th streets, known as the Smith Block, together with all rents therefrom so long as she may live ; & at her death she may have the right to will & dispose of said property—

" Provided that she shall free said property from all indebtedness & mortgages within five years of my death.

" I also intrust to her the (3) three small properties & two lots (150x100) located on the south side of Grape st., S. E. corner of 8th street, she to pay for moving the small house from lot belonging to her uncle Albert Ingraham to the space between the other two houses.

"All rents from the above three houses to be collected & accounted for until · all other mortgages, debts and bequests made by me shall have been paid & settled. After which these properties shall belong to my daughter to hold and dispose of at her wish.

"*Third.* I will & bequeath, to my brother William Hawkins, my sister Hannah E. Weston, my brother John Hawkins, my brother Edward Hawkins, the store property No. 390 Chelsea st., East Boston, Mass., to sell or keep as they may choose, after they shall have collected & divided the rents quarterly for five years from my death.

"*Fourth.* I will and bequeath my uncles & aunts on my father's side who may be living at the settlement of my estate, the sum of one hundred dollars.

" I will to my cousin James Chislett two hundred dollars.

" I will to my nephews & nieces fifty dollars each, that amount to be for each & to be paid to each with accrued interest to begin five years from investment upon reaching the age of twenty-one.

"*Fifth.* I will to the First Baptist Church, Vineland, two hundred dollars, to be used in payment of the debt on the parsonage if there be such debt at the time; if that debt has been paid the amount shall be paid directly to the church.

"*Sixth.* I also will fifty dollars to the Woodland Cemetery Association, Mass., to be put upon interest & the income to be used to keep in good order the lot owned by me in said cemetry.

"*Seventh.* I will to Rufus & Lizzie Ingraham, of Rockland, Maine, one hundred dollars each.

"All the balance of my property, either personal or real estate, shall be sold, & after all debts, mortgages & bills payable have been paid, all that remains

shall be equally divided between my wife & my daughter—Provided however that if my daughter should be married before all settlements are made, she shall be allowed five hundred dollars extra out of said monies to procure her outfit.

"I appoint my wife Ella H. P. Hawkins as my executrix, together with the assistance of my daughter Mary E. Hawkins.

"I advise them to call in my brother William Hawkins & Myron J. Kimball as advisers, these two to select a third if necessary.

　　　　　　　　　　　　　　　　　　　　"Thos. H. Hawkins."

"State of New Jersey, County of Cumberland, ss.—Personally appeared before me, a notary public for the State of New Jersey, Thomas H. Hawkins, who acknowledged this to be his signature for the purpose herein mentioned.

"Vineland, New Jersey, January 11th, a. d. 1890.

　　　　　　　　　　　　"C. H. Anderson, Notary Public.
[Notary Seal.]　　　"Myron J. Kimball, Witness.
　　　　　　　　　　　　"Judith P. Simmons, Witness."

The will is quite inartistic in its expressions and was probably drawn by the testator without the aid of counsel. It should be noted that by its terms the settlement of the estate is made to depend to a considerable degree upon the willingness and the action of certain special devisees in the payment of the testator's debts. The testator, in making his gift of the "post office block and the two small houses" to his widow, the answering defendant, and the gift of the "Smith Block" to his daughter, the complainant, adds to each devise a proviso that the beneficiary shall free the property from debt, and in giving to his daughter the "three small properties, &c., on the south side of Grape street, S. E. corner of 8th street," he also postpones her enjoyment of that property until "all other mortgages, debts and bequests" made by him shall be paid.

At the time of his death the testator was possessed of some personal estate, of which his executrix, the defendant Ella H. P. Hawkins, took charge. The amount of the inventory and appraisement of the personal property was $6,226.37. The testator was also seized of a number of pieces of real estate which were not disposed of by his will, save by that clause by which he directed the sale of all the residue of his property and the application of the proceeds to the payment of his debts and

an allowance for his daughter, and the division of the balance between his wife and daughter. These lands not specially devised by the will consisted of a house and lot at the northwest corner of Sixth and Grape streets, Vineland; a shoe factory; a house and lot at Sixth and Cherry streets, Vineland; three lots at Coronado Beach, California, and four lots in San Diego, in the same state.

The shoe factory, machinery and stock were by the testator, preceding his death, contracted to be sold, and the house and lot at Sixth and Cherry streets, Vineland, were in the same situation.

Though the testator died in February, 1890, and the will was proved in the same month, yet the shoe factory and the house and lot at the northwest corner of Grape and Sixth streets, Vineland, were not sold until after answer filed in this case, November 22d, 1895. It does not appear that the California lands have yet been sold.

The executrix, from the time of the testator's death, believed that the house and lot at the northwest corner of Grape and Sixth streets, was, by the first clause in the will, devised specially to her by the words, "including small house on N. W. corner of lot fronting on Grape street," and acting under this belief she took and retained for her own use the rents of that property from 1890 until some time after her accounting in the orphans court and filing her answer in this case. There was a small house on the northwest corner of the homestead lot, fronting on Grape street, to which the quoted words in the first devise undoubtedly applied, and the defendant, since filing her answer in this cause, concedes her mistake in applying this devise to the separate house and lot at the northwest corner of Grape and Sixth streets, and has since sold that property under the direction in the will to sell, and has the funds, proceeds of sale, in hand. No accounting was rendered of the rents of this property, taken while under the mistaken belief that she was the devisee of it. The defendant, after entering on her duty as executrix, dealt with the properties not specially devised as if they were assets coming to her hands as executrix. She collected rents from them and

Bird *v.* Hawkins.

expended moneys in their repair. She disposed of the house and lot at the southwest corner of Sixth and Cherry streets, Vineland, in accordance with the agreement of the testator, and received the proceeds of sale.

The executrix filed no account until April, 1893, when she exhibited in the Cumberland county orphans court the partial account referred to in her answer. In this account she is charged with a total of $12,101.48—the increase over the appraisement being largely due to rents accruing since the testator's death, and for values received in excess of those fixed by the appraisement, one item alone of this character amounting to $2,066.25. On the face of the account but one item of rent collected can be located as to the property out of which it arose. The other items are identifiable solely by the name of the tenants who paid the rent. As the testator made very different dispositions of the rents in devising his property, some of them being directed to the payment of debts, &c., this mode of stating the account affords but little light as to the observance of the terms of the will. The allowances made to the defendant in this account include expenditures for repairs on the houses at the southeast corner of Grape and Eighth streets, Vineland, and on the shoe factory, and other real estate expenditures of an undefined character in the account, but a considerable amount of which has been shown in this suit to have been spent in finishing the post-office building referred to in the first devise to the defendant Mrs. Hawkins. Appended to the defendant's account is a memorandum showing that at the time it was stated there were $1,135.56 of debts, and about $2,500 of general legacies which were unpaid, and that to meet these there then remained the shoe factory building and the unimproved California lots, the two valued at $2,500, the title to the latter property being by a decree of a California court declared to be held by the defendant Mrs. Hawkins, and the complainant, Mary E. Hawkins (now Bird), as residuary devisees. The appended statement of the accountant further recites that she is advised that she and the complainant hold the title of these lots in trust for payment of debts of the testator and of general legacies under the will. No

notice is taken in the account of the obligations imposed by the testator in his will upon certain of his devisees to pay certain of his debts, thus relieving his general estate.

The complainant files her bill, setting out the will in full, alleging that the defendant Ella H. P. Hawkins, the devisee of the post-office building upon the terms named in the will, had neglected and refused, for five years after the death of the testator, to pay a mortgage which covered the post-office property at the time of the death of the testator, as required by the terms of the devise to her; that she had collected the rents of the post-office property and also the rents from the two small houses described in the same devise with the post-office block, up to February, 1895, and charges that she claims to be entitled to those rents without complying with the terms of the will, which, the complainant insists, gave to Mrs. Hawkins for her life the post-office block and two small houses as one entire devise, upon the condition that the devisee, Mrs. Hawkins, should free all these properties from mortgage and other indebtedness within five years after the death of the testator, and that the defendant's failure to discharge the mortgage and other indebtedness within the time named precludes her from taking anything under this clause of the will. The bill sets out a release of the post-office building, which Mrs. Hawkins voluntarily executed, recorded and sent to the complainant in February, 1895, and declares that this release was rejected by the complainant and is yet unaccepted, and charges that the defendant Mrs. Hawkins has collected rents from other properties of the decedent, for which the complainant received no account. The bill further alleges that the phrasing of the will is such that it is difficult, without the aid of this court, to know what rents the defendant Ella H. P. Hawkins should account for, and what, if any, she may retain for her own use; that the defendant Ella H. P. Hawkins, who is executrix of the will, has not paid the legacies therein named, though in receipt of large sums of money applicable for that purpose, and charges that she should be compelled to account for her administration of the estate in this court. The bill further alleges that the complainant has,

Bird *v.* Hawkins.

within the five years named in the devise of the Smith block to her, freed that property from all mortgages and indebtedness as prescribed by the will, and prays that the will may be construed so that the rights of the defendant Mrs. Hawkins and of the complainant and other parties interested in the devises and the rents and in the payment of the debts may be ascertained and declared, and that the defendant Ella H. P. Hawkins may account accordingly as to her administration of the estate under the will and for rents received, &c.

The executrix, Ella H. P. Hawkins, is the sole answering defendant. She challenges the competency of this court to decree any relief by directing an accounting, because she alleges that the proper court to which the defendant should, in the several respects prayed for, render an account is the orphans court of Cumberland county, where she has already filed a partial account as executrix, and she alleges that court has assumed jurisdiction, and by its decree of January 29th, 1894, has allowed said partial account. And she further insists that the bill, so far as it asks an accounting in this court from defendant to complainant and of the administration of the estate of her husband, shows no ground of relief, and the defendant prays on these two grounds the same relief as if she had for these reasons demurred or pleaded them to the bill of complaint.

The further contentions of the answer sufficiently appear in the discussion of the defence.

*Mr. Henry S. Alvord,* for the complainant.

*Mr. William A. Logue* and *Mr. Clement H. Sinnickson,* for the defendant Ella H. P. Hawkins.

GREY, V. C.

I will first consider the efficiency of the objection interposed by way of plea to the jurisdiction of this court to grant relief by decreeing an accounting because the defendant has, as executrix, already filed a partial account in the Cumberland county orphans court; and secondly, that the bill, so far as it seeks an account-

Bird v. Hawkins.

ing for the administration of the estate, exhibits no ground for relief, &c.

It is argued in support of the objection to the jurisdiction of this court over an accounting by the defendant executrix, that the presentation to and passing of a partial account by the orphans court is such an assumption of jurisdiction by that court as excludes this court from entertaining a bill for an account.

The leading case on the point is *Salter* v. *Williamson, 1 Gr. Ch. 490,* where an account had been presented and exceptions had been taken to some items by the complainant, which were pending and undetermined when the bill was filed. Chancellor Pennington, on bill by next of kin and heirs-at-law for an accounting in this court, dealing with like objections to the jurisdiction of this court, declared that "until final decree of the orphans court there is no legal impediment in the way of this court taking cognizance of the case," and held that the jurisdiction of the two courts is concurrent; that if a considerable advance towards adjustment of the accounts had been made, this court should not interfere unless some substantial reason exists for invoking the aid of a court of equity; that a party might not be allowed at his mere pleasure to transfer the jurisdiction from the orphans court to the court of chancery, and that the question to be decided in such cases is, "have the complainants laid a proper foundation for coming into this court?" In the case cited, the orphans court had not only assumed jurisdiction and received an account, but exceptions thereto had been taken by the complainants and the orphans court jurisdiction had been accepted and submitted to by them. The chancellor held that the concurrent jurisdiction of this court might still be invoked if the complainant could lay a proper foundation for coming into this court. In *Clark* v. *Johnson, 2 Stock. 288,* it is flatly held that this court may assume jurisdiction to the exclusion of the orphans court in every case where the ends of justice seem to require it. The court of errors in *Hoagland* v. *Titus, 12 Stew. Eq. 298,* declared that the rule as to concurrent jurisdiction is, that there must be special circumstances to warrant the chancellor in taking the settlement of accounts out of

the orphans court. The opinion cites the two cases last referred to as recognizing the propriety of the rule, and declares that it has not since been questioned.

There seems to be but a single case where this view of the true relation of this court to an orphans court accounting has been doubted. In *Voorhees* v. *Voorhees' Executor, 3 C. E. Gr. 227,* Chancellor Zabriskie, in a case where an accountant defendant sought to dispute his own account, declared that an intermediate account in the orphans court is to be held final and conclusive except upon appeal, and that even fraud or mistake in the account cannot be inquired into collaterally, though fraud in procuring its allowance might in equity be so inquired into. The learned chancellor differs from the weight of authority in the court of chancery and is not in accord with the judgment of the court of errors as delivered by Chief-Justice Green in the case of *Black* v. *Whitall, 1 Stock. 585,* where, after full discussion as to the correction in equity of mistakes in orphans court accounts, it was declared to be not only in accordance with the sentiment of the profession but with the practice of the courts of equity, to correct even incidentally the mistakes of a settlement in the orphans court, and the learned chief-justice further stated this declaration to be an expression of the view of the court of errors, given in consideration of the practical importance of this question.

The exposition of the law by the court of errors in the above-cited cases is entirely at variance with the contention set up by the defendant in this case in support of the objection to the jurisdiction of this court, for the answer insists that the assumption of jurisdiction by the mere filing of an intermediate account is an exclusion of the court of chancery from further inquiry into the matter. The true doctrine, as declared by the authorities quoted, is that the jurisdiction is concurrent; that the assumption of jurisdiction by the orphans court does not exclude this court from entertaining a suit touching the pending accounting unless it has finally been disposed of, but that no such suit will be sustained in this court unless there is some sufficient special cause which should lead this court to interfere. The rule has

been restated in the court of errors in the very recent case of *Rutherford* v. *Alyea, 9 Dick. Ch. Rep. 413,* citing *Frey* v. *Demarest, 1 C. E. Gr. 239.*

In all these cases the inquiry should be, do the circumstances of the case show special cause for the interference of this court? This situation may arise from the complicated character of the accounting which may be necessary to ascertain and secure the rights of the parties, the uncertain provisions of wills, which may leave the relations of the beneficiaries and the executor in such doubt as to the extent and liability to account that all parties in interest must be called in and their respective rights determined before a proper accounting can be had. The case under consideration presents such a situation, created in part by the testator himself by the terms of his will and in part by the position of his estate at the time of his death.

The executrix stands in a fiduciary relation as trustee for the creditors and legatees. She contends that the personal estate is insufficient to pay the debts. The will is so far from precise in its expressions of the intent of the testator that the executrix, who is also a devisee, supposed for several years while under the advice of astute counsel, that one of the devises to her included a house and lot which, under the advice of her present counsel, she now concedes since this suit was begun, did not pass to her by that devise. The testator seeks to arrange for the payment of certain of his debts by requiring certain devisees to pay them. The executrix herself is one such devisee. She refuses to pay the debts and mortgages upon the lands devised to her, as directed by the testator, though she insists upon retaining the rents of the devised property pending her election not to accept, which election she claims to have exercised after she had stated her account. The questions of the effect of the will in disposing of the post-office property and the two-house property, whether the devisee accepted that devise, what debts and mortgages were intended by the testator to be paid by the devisee, involve a complicated and difficult inquiry. The settlement of the executor's account necessarily requires an accounting for rents. The testator expressly directs that all rents from the three houses

(Smith block) given to the complainant be collected and accounted for until all other debts, &c., shall be paid. In her answer the executrix admits that she does not know whether that part of the indebtedness, &c., for which the rents of the "Smith Block" were to be collected, &c., has been paid or not. This ignorance of the executrix on this substantial matter exists some five years after the testator's death, so that the protection of the executrix herself would seem to require a settlement of such a character that the complainant as special devisee of the "Smith Block," &c., could be obliged to show the discharge of that indebtedness. The testator, by the peculiar provisions of his will, has so given some of his devises and charged the beneficiaries with the payment of portions of his indebtedness that it is impossible to know whether there is any residue, and of what it consists, or properly to apply other assets to the payment of his debts, until the relation of these special devisees to the debts they are required to pay, and their action or non-action in that regard, have been ascertained and declared.

These and other complicated questions, place the settlement of this estate in the position contemplated by the decisions referred to, where the powers of this court may properly be invoked to interpret the testator's will and direct such a settlement as may ascertain the rights of all the parties, define the extent of their liabilities and direct an account to be taken accordingly.

As to the contention that the bill shows no ground entitling the complainant to an accounting from the defendant, the bill alleges, as stated, that the complainant is the heir-at-law, and the will shows her to be a special devisee—that she is entitled to a legacy of $500 out of the residue, as stated, and is also residuary legatee of one-half of the remainder. The bill alleges that the defendant has not paid debts, &c., which, under the will, she is personally obliged to pay; that she, the defendant, has taken rents and seized property not devised to her, and though she has proven the will, which is set out in full in the bill, that she has failed to gather the estate and to pay the debts and legacies of the testator. These allegations and an inspection of the

will itself, sufficiently support the claim of the right to an accounting, for it cannot be known which of the debts are, by the testator, required to be paid by the devisees (thereby relieving the general estate) until the terms of the will are construed. Until these debts thus specially provided for and the other debts of the testator are ascertained by an accounting and paid in accordance with the testator's design, the residuary legatees cannot know whether anything remains for them. The complainant is one of these residuary legatees, both as to the special allowance of $500 given to her out of the residue and as to the one-half part of the remainder of the residuary estate. This entitles her to such an accounting as will ascertain and define the extent of her interest in the testator's estate in the hands of the defendant.

In ascertaining the meaning and effect of the testator's will and in directing a proper accounting, there is no question to be determined touching the devise of the home property and its equipment and the small house on the northwest corner of the home property lot fronting on Grape street. The devise of the homestead, &c., was absolute and in fee to Mrs. Hawkins by the first clause of the will. The reference to the " small house on N. W. corner," &c., was for a time, as above stated, mistakenly supposed by the defendant to designate another house and lot at the northwest corner of Sixth and Grape streets. A careful reading of the will makes it plain that the latter property was not referred to. Both sides now agree that the " small house," &c., intended was that one on the homestead property.

The meaning of the second clause, devising the post-office and two-house lot properties to the defendant, is the serious controversy between the parties and involves the liability of the defendant to pay the indebtedness and mortgages on the post-office property and on the two small houses on Grape street, between Sixth street and Boulevard. The words of this devise are :

"I do also commit and intrust to my wife Mrs. Ella H. P. Hawkins the property known as the post office building or block located on Landis avenue No. —, Vineland, New Jersey.

"Together with two (2) small houses located on the south side of Grape street between Sixth street and the Boulevard, Vineland, including one lot of land upon which they stand, she to receive and enjoy all rents therefrom so long as she may live, provided and upon condition that she shall within five years of my decease, free said properties from all indebtedness & mortgages that may be against them at the time of my death. Upon the death of my wife, the aforesaid post office property shall go to my daughter Mary Elizabeth Hawkins, to be held by her in trust so long as she may live; she to have the right to will & bequeath the same to her husband & heirs, if such heirs exist at the time of her death."

The further disposition of this property is shown in the will as quoted in full above.

The complainant insists that the gift of the post-office and the two-house lot to the defendant Ella H. P. Hawkins, must be construed to be an entire devise to the defendant, upon condition subsequent, and that by her failure to pay the debts and mortgages against those properties within five years from the testator's death, she has forfeited her interest in both of them.

This contention correctly asserts the entirety of the devise of the post-office and the two-house lot. The testator obviously intended this gift to be a disposal of the two properties as one entire devise. They are given together. The words of gift and of definition and limitation of the devisee's estate, and the attendant charges imposed by the testator, apply to both properties, which are thus united by him into a single gift. He gives the post-office property "*together with*" the two house-property. There are no words of severance used in giving them to Mrs. Hawkins, and that he intended her to have them for life as an entirety, appears the more plainly, because upon her death he directs their severance into two devises over, which are then disposed of separately. The devise to Mrs. Hawkins of the post-office and the two-house lot must be considered to be a single devise. The prescription in the will of the terms attendant upon this gift are therefore applicable to the devise as an entirety, and must be performed by the devisee if the devise has been accepted.

The complainant further contends, as above stated, that the failure of Mrs. Hawkins to pay the debts, &c., on the post-office

building being a non-performance of a condition subsequent, has forfeited the devise to her.

The phrasing of this gift plainly indicates that the testator intended the life estate of Mrs. Hawkins to vest at once upon his death. The condition imposed is necessarily subsequent, because by the words of the devise the time within which it is required to be performed, is fixed at five years after the testator's death. These are the essential elements of an estate upon condition subsequent. But that the devise is of this character and that the devisee has failed to perform the conditions, will not lead this court to declare and enforce a forfeiture.

It is stated to be a rule of universal application that a court of equity will never enforce a penalty or a forfeiture. *2 Story Eq. Jur.* § *1319; Livingston* v. *Tompkins, 4 Johns. Ch. 431.* If the devise be upon terms which are capable of being enforced in equity, and the gift be accepted, equity will compel compliance with the conditions annexed to it. *Schoul. Wills* § *599; Pom. Eq. Jur.* § *460; Blake* v. *Bunbury, 1 Ves. Jr. 523; Glen* v. *Fisher, 6 Johns. Ch. 33; Skillman* v. *Van Pelt, Sax. 511; Yawger* v. *Yawger, 10 Stew. Eq. 216.* If this be inequitable or impossible, equity will award compensation in damages for breach of the condition, if that remedy can be made adequate. *Yawger* v. *Yawger, supra; 2 Story Eq. Jur.* §§ *1314, 1315.*

Though the mode of expression of this devise indicates a gift upon condition, it is quite evident that the testator expected Mrs. Hawkins to accept the devise. He makes no provision for a refusal to accept. His gift over is expressed to take effect upon Mrs. Hawkins' death, not upon her non-acceptance. He believed that Mrs. Hawkins would take the property for life and pay the debts and mortgages against it upon the terms named, and he made no provision for any different circumstance. He had in view the gift over of the post-office building to his daughter and expected the latter to receive these properties free from debt.

The defendant, on the other hand, claims that the effect of this devise of the post-office and two-house properties, was to give her, during the period of five years after testator's death, an elec-

tion whether she would accept the devise of the post-office property upon the terms stated in the will or not, and that during that period of five years she was entitled to receive the income therefrom without liability to account therefor, paying taxes and keeping the property in repair; that she is entitled to take the two-house lot unaffected by the provisions in the will as to payment of debt, &c., because those conditions attended only upon the devise of the post-office property, and do not apply to the two-house property in the same devise to her; and she contends that she has a right to keep the rents of the post-office up to February 1st, 1895, which she admits she received, and a life estate in the two houses, without paying any debts or mortgages whatever against those properties, as presented by the will.

It is to be noted that the defendant sets up no claim that she was unacquainted with the character and value of these properties devised to her, or that she was misled or mistaken as to the amount of the debts and mortgages against them, which the testator directed she should pay. She depends here solely upon her contention that by the will she was given for five years an election to accept or reject any part of this devise, and meanwhile to take the rents of the whole; and that she was under no obligation to pay any debts or mortgages during the five years, &c.

It appears, I think, that the defendant was so related to the properties and the claims against them, that from the time of the testator's death she was fully informed as to their condition. She was the widow of the testator and the terms of his will devised directly to her the home property where the testator resided when he made his will, in fee, and also gave her the post-office property and the two-house property for life, all in her own personal right. There is nothing before me to show that this was not a beneficial gift to her, considering the devise as an entirety, and estimating its total value as against the total of the debts and mortgages outstanding upon the devised premises. I think the actions of the devisee at the time of the testator's death hereinafter discussed, indicate that she esteemed it to be beneficial.

Bird *v.* Hawkins.

Regarding the defendant's contention that she had a five years' election, a right to rents meanwhile, and privilege of selection of part of the property devised, &c. There is nothing in the will in any way giving to Mrs. Hawkins a right during five years to exercise an election whether she would accept this devise or reject it, and meanwhile to take the rents. The gift to her, as expressed in the will, is that she shall

"receive and enjoy all rents therefrom so long as she may live, provided and upon condition that she shall, within five years of my decease, free said properties from all indebtedness," &c.

The "five years" named in the will refers wholly to the period within which she shall free the properties from debt, and has no reference whatever to the time within which she shall choose whether she will accept the devise; nor is there any word or phrase in the will which gives to the defendant a privilege to select from this gift a portion which she may accept and to reject the residue. The testator did not intend that she might accept the gift of that part of the devise which might be clear of debt and reject that which was mortgaged, and thus escape the performance of the terms which he, by his will, imposed upon his devisee and defeat his purpose to free these properties from debt.

In equity, the effect of this gift to Mrs. Hawkins of the post-office property and the two-house property, as an entire devise, was, upon her acceptance, to vest in her a life estate in both those properties, subject to a charge that she should pay the debts and mortgages against them.

It will be observed that by his will the testator gave directly to his widow, the defendant, in her own individual right, a fee in the homestead and a life estate in the devise now under consideration, and that the will contains no provision that these devises were to be in lieu of her right of dower. If she desired to maintain her common-law right of dower against such a will, she must have dissented from the terms of it within the time and the mode prescribed by the statute. *Gen. Stat. p. 1298 § 16.* She did not do this, nor does she now claim any dower

right. She therefore stands upon this inquiry, simply as a devisee, with the same rights to disclaim and refuse to accept a devise of land which any other devisee might have.

The devise in question having been a gift of an entirety for life, subject to the performance of certain terms imposed, the devisee might accept it as an entirety, subject to the terms named by the testator, or she might reject it as an entirety, and thus be freed from the duties attendant upon acceptance. It remains to be ascertained whether the defendant accepted the devise, and has thereby become liable to perform the requirements of the testator.

There is an equitable rule, relative to gifts under a will that also requires the beneficiary to do some act or make some payment named by the testator in his will, which is directly applicable to the attitude of the defendant towards this devise of the post-office and two-house properties, and the testator's direction that she pay the debts and mortgages on those properties. It is declared by Chief-Baron Eyre, in *Blake* v. *Bunberry, 1 Ves. Jr. 523,* to be " the settled doctrine of a court of equity and agreed on all sides that no man shall be allowed to disappoint a will under which he takes a benefit." That is, he may not accept the benefits which a will confers, without he also performs the duties which it imposes. This doctrine has been carried to the extent that one who accepted a benefit under a will given upon terms that the beneficiary should convey his own estate to some one else named by the testator, has been obliged so to convey away his own property. *Blake* v. *Bunberry, ubi supra.* In *Glen* v. *Fisher, 6 Johns. Ch. 33,* where lands were devised, charged with the payment of a legacy and the devisee accepted, he was held to be personally and absolutely liable in equity to the legatee for the legacy. The same rule has been enforced in this state. In *Stevenson* v. *Brown, 3 Gr. Ch. 503,* there was a devise of the use of a farm to the widow *durante viduitate* and to others in fee, charging the payment of legacies; the widow continued in possession and took the rents and profits of the farm and the personal property devised to her. On a bill filed by the legatee it was held that the devisee, if she elected to take

the devise, must take it *cum onere.* In *Van Duyne* v. *Van Duyne, 1 McCart. 50,* a testator gave a farm to his son Isaac, "subject to the payment of his debts and the support of his wife." The rule in equity was declared to be well settled that a man shall not take a beneficial interest under a will, and at the same time set up any right of his own which would in any way prevent the full effect of every part of the will. This rule would appear to operate with some severity if applied to a will which contains several separate and independent gifts to the same beneficiary, upon one only of which there is fastened by the testator a requirement for the payment of debts or legacies, as it would prevent the acceptance of the separate and uncharged gifts by the devisee, unless he performed the requirements attached to that gift which alone was charged with the obligation to pay. The rule, however, was declared as stated by Chancellor Green in the *Van Duyne Case,* and has been followed and applied in this state where there was an acceptance of an independent devise. *Yawger* v. *Yawger, 10 Stew. Eq. 218.* The testator is deemed to have all his gifts to his beneficiaries under consideration and to have imposed his terms with all these gifts in view, and the beneficiary is not permitted to accept what is profitable to him and disappoint the testator in other particulars.

The court of appeals of New York, in *Gridley* v. *Gridley, 24 N. Y. 130,* held that the acceptance of a gift of real and personal estate under a will which declared that the devisee should pay the testator's debts, imposed a personal liability upon the devisee to pay the debts, on which a creditor could sue at law without any express promise. In Connecticut the same principle was declared in *Lord* v. *Lord, 22 Conn. 602; Olemstead* v. *Brush, 27 Conn. 530,* the court holding that though the beneficiary was both executor and devisee (as in this case now before me), yet he was not to pay the legacies as executor, whereby he could charge the payment of it against the estate of the testator in his hands, but as devisee, the payment of the legacy constituting a condition of the devise, the acceptance of which implied an assent to the condition and a promise to pay it. In the cases cited, actions at law by creditors of the decedent whose debts were

directed to be paid by a devisee, were sustained against the devisee upon an implied assumption that he would pay, arising out of the acceptance of the estate devised under such a condition. The remedy in equity is deemed to be more appropriate and complete than at law. *Pickering* v. *Pickering, 15 N. H. 281.* The principle upon which these cases stand is not based upon any duty of the executor, or upon any rule directing the mode or order of applying a testator's assets to the payment of his debts, but upon the equitable obligation imposed upon one who accepts a benefit proffered upon named terms, that receiving the benefit he shall perform the terms prescribed.

Applying the principle stated to the case under consideration has the defendant Mrs. Hawkins accepted the benefits conferred upon her by the will, and thus made herself liable for the payment of the debts and mortgages upon the property devised to her?

The doctrine stated in the cases of *Blake* v. *Bunberry, Van Duyne* v. *Van Duyne* and *Yawger* v. *Yawger, ubi supra,* declares that the acceptance of any benefit under the will imposes the obligation to obey the testator's command. Under these expositions of the law Mrs. Hawkins' acceptance of the devise of the home property and its furnishings, which acceptance is wholly undisputed, was effectual to oblige her to pay the debts and mortgages upon the post-office property and the two-house property given to her under the second devise.

But considering the rule from the more limited point of view, namely, as applicable upon Mrs. Hawkins' acceptance of the special devise of the post-office property and the two-house property, has she since the death of the testator accepted the special devise and thus undertaken the performance of the terms imposed? So far as her testimony in this case goes, and her action also since February, 1895, she appears to deny any acceptance of the post-office property, save as to the rents for five years after the testator's death; but she asserts her absolute right to keep these rents, and also to retain the two-house property during her life, &c., regardless of any obligation to pay debts, &c., as provided by the will. This attitude is taken after full acquaint-

.ance with all the properties devised and having the advice of counsel.

The consideration of the testator's will upon which this claim is based cannot in my view be supported. The testator gave no .choice to the devisee to select a portion of this devise and reject the rest with the debts, &c., nor did he give her the privilege to take the rents, &c., for five years. It is claimed in the answer and was strenuously argued that the privilege to take these. rents was given to the widow as a special provision for her maintenance and must be so construed, but this contention has no support in the terms of the will, which give the widow the home property and its furnishings in fee, this special devise upon terms, and .one-half the residuary estate, which the testator may fairly be considered to have thought a substantial provision for his widow, :as she herself testified that he believed he was worth $40,000 to $50,000. In *Stevenson* v. *Brown, ubi supra,* where the widow was a devisee, this same claim for special consideration for her, was advanced, but the chancellor said "there is no rule distinguishing between the widow and any other devisee." When the widow received these rents of the post-office as her own and still retains and insists upon her right to retain them, and took possession of and retained the two-house property and justified both under the will, having no other claim or right, she accepted the devise, and equity will oblige her to perform the conditions which the testator imposed in his gift of these properties.

The circumstances of this case also show by the weight of the .evidence that Mrs. Hawkins did in fact accept this devise of both the post-office property and the two-house property. As to the latter, there is no dispute that she took possession at once upon the testator's death, and has ever since retained it; she .claims a right to it in her answer. As to the post-office property, there is a more complicated condition of circumstances.

At the time of the testator's death the post-office building was in an unfinished state, being in process of construction. The .devisee Mrs. Hawkins appeared as a witness. She is evidently more than usually intelligent, and entirely capable of understanding the condition of the testator's estate and her own relation to it.

She had been married to him for thirteen years before his death. She lived in the same town in which the post-office was being constructed. She knew its unfinished condition and took possession. She completed it, in part by obtaining the fulfillment of testator's unfinished agreements, by paying debts which were liens on the property, and by laying the sidewalks and procuring some of the interior work to be done and paid for wholly by herself. She testifies that in paying these bills against the post-office she did not intend to refuse the devise of that property, and that so far as the landlord was required to fit up the building, she did it at her own expense. She leased the property to tenants and took and still keeps all the rents, and declares that she did not intend to account for them as the property was her own. She admits by her answer that she was bound to pay the taxes and keep the property in repair. Mrs. Hawkins thus had the most ample opportunity to ascertain and know, both the value of the premises and the amount of the debts and mortgages, if there was in fact any lack of knowledge on this subject on her part at the time of her husband's death, and she does not pretend that there was any such ignorance. With this knowledge and opportunity she for four and a half years after her husband's death, up to February, 1895, took all the rents and did every act attendant upon ownership, and never in any way disclaimed or disavowed her ownership until, at the earliest, September, 1894, having meanwhile had all the property included in the devise in her full possession and enjoyment. She alleges in her answer that she declared in September, 1894, her determination not to accept the post-office, by an averment to that effect in other equity proceedings. She also alleges that she afterwards notified the complainant of her intention not to accept and not to collect the rents of the post-office building after February 1st, 1895, and that on December 29th, 1894, she made the voluntary release of the post-office building to the complainant, save the rents up to February 1st, 1895, which rents she kept and still keeps. Thus by her own showing Mrs. Hawkins, with full knowledge of the character and condition of the premises and abundant opportunity to ascertain and know the value of the property and

the charges upon it, took possession and for four and a half years retained it, doing all the acts which an owner could do and keeping all the rents. These acts of ownership have no justification whatever unless they are deemed to have been done as devisee under her husband's will.

Mrs. Hawkins' explanation now made is that she did them upon her understanding (under the advice of her counsel), that she was entitled to the returns of the post-office property for the five years, and that up to the time, December 29th, 1894, when she sent the voluntary release of the post-office property to Mrs. Bird, the heir-at-law and succeeding devisee, she " *had not decided* " in her mind whether to accept or refuse the devise of the post-office property. There is not a single supporting incident in the proofs which sustains this statement for the defendant. The testimony she herself gave on the point was in response to leading questions, addressed wholly to draw from her a definition of her condition of mind in doing acts which of themselves indicated that she had accepted the devise. By the trend of the whole testimony Mrs. Hawkins is shown to have accepted the property at once that the testator died, acting as she herself swears as landlord and doing all the acts of an owner. She thus fixed her *status* as an accepting devisee, and assumed the performance of the attendant duties imposed by the will. Indeed she partially performed them by paying part of the post-office debts. Her attempt now to avoid these responsibilities, by her after date testimony as to her intention of mind, savors of that form of casuistry by which it is claimed that the intention can be so directed that the fact is changed.

She shows in her answer that she retains the two-house property which is a part of the devise which required payment of the mortgages and indebtedness, &c. She thus again accepts the testator's bounty by taking part of the very devise imposing the duty, but she still seeks to defeat his purpose.

In my judgment the foregoing review of the testimony shows, notwithstanding Mrs. Hawkins' present denial, that she in fact accepted the devise of the post-office as well as the two-house property and having once accepted, she could not afterwards dis-

card it and thus avoid the attendant obligations.  Her present and continued retention of the rents of the post-office property, under an untenable construction of the will, must also carry with it the responsibility of an acceptance of the devise.  She could not do these various acts which charge her with the duty required by the testator, and yet avoid it by insisting upon her own unsupportable interpretation of the will.

The result of Mrs. Hawkins' acceptance was that she became the owner of the devised properties, the post-office and two-house property, as tenant during her life.  As such tenant she is entitled to all the rents of those properties during her life.  She is not to account for these rents, because they belong to her, but she is bound, under the cases above cited, to pay the debts and mortgages upon the properties thus devised to and accepted by her.

The testator did not intend nor did he direct that she should pay his general debts, but, as he expressed it, such as might " free said properties from all indebtedness and mortgages that may be against them at the time of my death."  This included the mortgages upon the post-office and those on the two-house property, and all debts which from their character were distinctivly a charge upon those lands at the time of the testator's death.  The post-office building being unfinished,. the testator no doubt had in view the debts for construction outstanding against this property.

All debts on which at the time of the testator's death a mechanic's lien could have been filed against the post-office building, were within the class mentioned in the will.  From these and the mortgages, the devisee was called upon to " free " these properties.  Title having been received and accepted by the devisee, the payments which she made upon the post-office building were for her own benefit and at her own charge ; none can be allowed to her as executrix out of the funds of the estate.  She was personally bound to pay the debts and mortgages which were already on the properties devised.

The post-office property has since the testator's death been sold on foreclosure of mortgages which were liens on it at that

Bird v. Hawkins.

time. This has not relieved Mrs. Hawkins from the duty to pay these mortgage debts. As between Mrs. Hawkins holding the devise for life with obligation to pay the mortgage debt, and the complainant and those who are seized of the next succeeding estate in the lands devised to her for life, Mrs. Hawkins, having accepted the devise, was bound under the terms imposed by the will to have paid off this mortgage as necessary to free the property so devised to her. This she did not do, and because of her default the post-office property has by foreclosure sale been applied to the payment of these mortgages. So far as its value has thus been taken, Mrs. Hawkins is equitably bound to restore it.

There is a surplus of the foreclosure sale. The restored value and this surplus money stand in the stead of the post-office property. The income of this fund and of the two-house property belong to Mrs. Hawkins for life, and on her death the substituted fund, representing the post-office property and the two-house property, should go as directed by the testator in disposing of the post-office property and of the two-house property.

By the terms of the will devising the "Smith Block" to the complainant, the testator declares that the complainant "shall free said property from all indebtedness and mortgages within five years of my death." The complainant admits that she has accepted the devise of the "Smith Block." She has thus become personally liable for the payment of the debts and mortgages upon that property upon the principles above stated. The complainant insists that she has paid these debts; the defendant states that she does not know of these payments. The defendant has a right to an accounting from the complainant on this point, because as executrix she is bound to see that the debts are paid according to the mode prescribed by the will, and also because the payment of this portion of the testator's debts by the complainant will to that extent free the residuary estate, one-half of which belongs to the defendant.

All the rents from the three houses devised to the complainant referred to in the second clause of the will, are directed to be collected and accounted for until "all other mortgages, debts

and bequests" should be paid, after which the complainant might dispose of them. The testator does not in terms direct the actual application of these rents to the payment of "all other mortgages, debts and bequests," but it is evidently within his thought that they may ultimately be so used, because the complainant to whom he gives the properties out of which these rents arise, can only dispose of them after all other mortgages, debts and bequests are paid. The scheme of the testator as to the payment of his debts may be fairly gathered from the several provisions of his will. He intended that his wife would pay the mortgages and debts against the post-office and two-house properties. That his daughter should pay the mortgages and debts against the "Smith Block." As to the other debts not included in the above classes, and the legacies, the testator desired to make sure of their payment, and therefore gave the direction as to the collection and accounting for the rents of the three houses, but he does not direct their primary application for that purpose, nor does he in any way exonerate his general personal estate from its ordinary use as the first fund from which debts and legacies must be paid.

The residuary clause, though further providing for the payment of debts from a fund to arise from both real and personal, gives no specific direction whether they shall be paid out of sales of personal estate or real estate, nor does it define what fund, the general personal, the rents of the three houses, or the residuary fund, shall be primarily used to pay debts and legacies.

The general rule both at law and in equity is that the personal estate of the testator is first applicable to the payment of his general debts and legacies, and it is not relieved from this burden even if his lands be specifically charged with their payment. *Whitehead* v. *Gibbons, 2 Stock. 236.* It requires the express terms of the will, or necessary implication arising from the words of the testator, to exonerate the general personal estate from the payment of debts or to postpone its primary responsibility. *Ib. 237.* The testator in the case in hand must be held to have directed the collection and accounting for these rents of the three houses in view of the operation of this rule, and the

ultimate application of these rents and the residue of his real estate to the payment of his debts and legacies, if necessary. He had obliged certain devisees to pay certain specified debts; he expected his personal property to pay the other debts, but to be certain of the payment of all his debts and legacies, he provided that the rents of these three properties should be "collected and accounted for" until this result was accomplished, and also provided for the application of the whole residue for that purpose. That is, the rents should be kept in hand, as a second or auxiliary fund, applicable so far only as might be necessary to pay the residue of the mortgages, debts and bequests that the personal estate failed to pay, and if when the settlement came to be made all these were insufficient, then the residuary real estate should be used.

There is no express direction that the executrix shall enforce the implied undertakings of the accepting devisees to pay the debts and mortgages against the properties severally devised to them, nor that she shall collect and account for the rents of the three houses, &c., until all other mortgages, debts and bequests shall be paid. But as the duty to gather the assets and pay the debts of the testator is cast by law upon the executrix, and as these special provisions are the modes created by the testator to accomplish these payments, the executrix, by implication, takes the power which is necessary to the performance of the duty. *Chambers* v. *Tulane, 1 Stock. 157; Whitehead* v. *Gibbons, supra.*

The foregoing examination includes all of the matters which are necessary to enable an account to be stated between the parties. There are other questions suggested in the complainant's bill, as to what estate the complainant has in the post-office property under the first clause in the will, and what rights of disposal, and to whom, &c., which have no bearing upon the questions in issue touching an accounting, or other matter of equitable jurisdiction, and involve an inquiry as to title to land which should properly be settled in another forum. *Torrey* v. *Torrey, 10 Dick. Ch. Rep. 410.*

I will advise a decree for an accounting in this court upon the principles indicated in the foregoing opinion.