The Job Haines Home for Aged People

*v.*

Clarence A. Keene et al.

[Submitted June 2d, 1917. Decided June 15th, 1917.]

A person accepting a benefit under a will is required under the doctrine of election to perform all the requirements of the will, nor can he take a beneficial interest under the will and set up any right or claim of his own to defeat its full operation, after a lapse of time so great that it is impossible to restore the parties to their original position.

---

On bill, &c.

*Mr. Charles G. Titsworth,* for the complainant.

*Mr. Albert W. Harris,* for the defendants.

Foster, V. C.

This is an action to quiet complainant's title to certain property in the city of Newark used as a home for aged people.

The premises in question were part of the real estate devised

by the last will of Joseph Crane, which was probated October, 1832, to his son and four daughters. Phoebe Keene, one of the daughters, thus acquired an undivided one-fifth interest in the property, and by a deed dated October 15th, 1832, the other devisees conveyed their undivided four-fifths interest to said Phoebe Keene and Alfred Keene, her husband.

By his will, Alfred Keene, who died in 1880, bequeathed to his wife, Phoebe, certain personal property, and also gave her the use of the premises in question for life, and on her death he devised the same to his son Joseph Edward Keene. In addition to Joseph, Alfred Keene left him surviving two other sons— Thomas Austin Keene and Howard DeWitt Keene; and the defendants are heirs-at-law of Thomas and Howard.

Alfred Keene made the devise to his son Joseph on the death of his widow of specific property, viz., "the house and premises where I now reside," which are the premises in question, and this devise was made to Joseph and accepted by him, as stated in Alfred's will, "in full satisfaction of all claims against me or against my estate for any services rendered to me in my lifetime or for any other indebtedness of any kind whatsoever."

Thomas was given and discharged from the amount of his indebtedness to his father; and to Howard was given a bond and mortgage for $1,800, with the accumulated interest thereon; and Alfred also bequeathed and devised to each of his sons an equal one-third interest in the residue of his estate.

By his will Alfred Keene sought to make a balanced disposition of his estate among his widow and their children, and the widow and children accepted without objection the provisions which he had made for them.

After the death of her husband, Phoebe Keene continued to live on the property with her son Joseph for the rest of her life. Thomas had his home in Brooklyn, New York, where he died in 1889, and Howard's home was in Yonkers, New York, where he died in 1899. Neither of them, or any of their children, ever lived on the premises in suit after the death of Alfred in 1880. Joseph, however, continued to live on the property from the time of his father's death until he died on November 22d, 1912.

Joseph left a last will and testament which has been duly probated, by which he gave certain legacies to the defendants the children of his brothers Thomas and Howard, amounting to about $4,500, and which they have accepted, and he devised the premises in question and the residue of his real and personal property to complainant, for the purpose of establishing and maintaining a home for aged people.

Complainant has been in possession of the premises since May, 1914, and has been conducting the same as an auxiliary home for aged people in accordance with the direction of Joseph's will.

Joseph's title to the premises under the devise from his father was never questioned by his mother, Phoebe Keene, or by his brothers, Thomas and Howard.

Defendants, however, as the respective heirs-at-law of Thomas and Howard, now claim to own an undivided two-thirds interest in the property by reason of the facts above set forth.

Their contention is that under the will of their great grandfather, Joseph Crane, their grandmother, Phoebe Keene, became seized of an undivided one-fifth interest in the property absolutely; that the deed of October 15th, 1832, from Joseph Crane's four other children and devisees to Phoebe Keene and Alfred Keene, her husband, conveyed their four-fifths interest in the property to Phoebe and Alfred as tenants by the entirety; and that upon the death of Alfred the fee to the entire property became vested in Phoebe by the joining of her title to the undivided one-fifth interest with her title to the remaining four-fifths interest which she acquired as the surviving tenant by the entirety. They further contend that the fee to the property being thus vested in Phoebe, the will of her husband, Alfred, by which he gave her, as his widow, a life interest in the property, and on her death devised the same to Joseph was ineffective to accomplish its purpose, as the property belonged absolutely to Phoebe; and on her death intestate the property descended to her three sons—Joseph, Thomas and Howard—and that the only interest in the property which Joseph could, and in effect did, devise to complainant was his undivided interest in the property, and that these defendants as the heirs of Thomas and

Howard, both of whom died intestate, inherited the remaining two-thirds interests on the death of their respective parents.

Complainant's answer to the contentions of defendants is that Phoebe Keene, and all claiming under her, or under her sons Thomas and Howard, are estopped from asserting title to the property; or to the disposition made of it by the will of Alfred and also by the will of Joseph, because Phoebe Keene and her sons Thomas and Howard elected to take and accept the provisions made for them in the will of Alfred in place of their interest in the premises in question; and, further, because the defendants elected to accept the provisions made for them by the will of their Uncle Joseph, in lieu of any interest they may have been entitled to in the property.

Complainant also asserts title to the property which it claims to have acquired by the continued adverse possession thereof of Joseph and complainant since the death of Alfred Keene in 1880.

Complainant further insists that under a provision of Joseph's will which reads: "If any contest the provisions of this will they are to lose all benefits therein," defendants having elected to receive and accept the benefits given them under his will are estopped by this provision from contesting the devise therein made to complainant.

The questions to be determined under the issues thus presented are:

Whether Phoebe Keene and her sons Thomas and Howard were put to their election by the disposition made of her property by the will of her husband, and if they were, if they exercised their election by accepting the benefits given them by his will.

If Phoebe, Thomas and Howard were not obliged to elect, and did not elect, under the will of Alfred Keene, were defendants as the heirs of Thomas and Howard put to their election by the devise of the property to complainant under the will of Joseph, and if so, did they exercise their election by accepting the benefits given them by his will?

If an election in either case was not necessary, or if it were not exercised, has complainant through its own and Joseph's

possession acquired adverse title, under color of title to the property?

What effect, if any, has the provision of Joseph's will against a contest upon the controversy?

The general doctrine of the law relating to election is stated by Mr. Justice Depue in delivering the opinion of the court of errors and appeals in *Pratt* v. *Douglas, 38 N. J. Eq. 516* (at *p. 536*), as follows:

"Where the testator has only a partial interest in the property he disposes of by will, courts will incline, as far as possible, in favor of a construction which will apply the language of the will only to the interest or estate which the testator is able to dispose of in his own right, and it requires an unequivocal expression or indication of interest to dispose of the entire property in order to raise a necessity for an election. *1 Pom. Eq. Jur. ¶¶ 488–493.*" And he adds that in *Adsit* v. *Adsit, 2 Johns. Ch. 448*, Chancellor Kent, from a review of the cases, deduces a rule that has met with uniform approval—that to enable the court to deduce an intention that a testamentary gift to the widow should be in lieu of dower, "the claim of dower must be inconsistent with the will and repugnant to its dispositions, or some of them; it must, in fact, disturb or disappoint the will."

In *Stevenson* v. *Brown, 4 N. J. Eq. 503*, certain lands were devised for life to testator's widow, and it was held that "the widow was at liberty to take her dower in the lands, or to accept the devise. If she elected to take the devise she must take it *cum onere.* There is no rule distinguishing between the widow and other devisees," as "the settled principle in equity is, that he who accepts a benefit under a will must conform to all its provisions and renounce every right inconsistent with them."

In the case before us, we find Alfred Keene by his will devising to his son the particular property where he lived and to which he had no title, at the time of his death, and which upon his death became the absolute property of his widow, and giving her a life interest therein, together with certain personal property which she accepted. There is no express statement in his will that the provisions made for his widow are given her in lieu

of her ownership of the property, and an intention on his part that such should be their effect can only be deduced by clear and manifest implications from his will, founded upon the fact that her claim of title to the property would be inconsistent with the will and so repugnant to its dispositions as to disturb and defeat them. *Pratt* v. *Douglas, supra.*

An intent of the husband to dispose of his wife's share of property and thus put her to an election will never be inferred when the words of the gift may have their fair and natural import by applying them only to the property which he has the power to dispose of by will. *1 Pom. Eq. Jur.* § *550.*

In determining the necessity for an election there is a distinction between a gift in general words of description, such as "all my lands" or "all my estate," and the like, and a gift of specific property. "In cases of the first class, an obligation to elect does not arise, for the testator's language can have full effect when applied only to his share or interest and he is presumed to have intended to give only the property he had to dispose of."

"In cases of the second class it cannot be said that upon every specific devise or bequest a duty to elect arises. A case for an election by the co-owner of the property so given, who is a beneficiary under the testator's will, will be presented only where the testator's gift of it to another is so expressed by words of description as to import an intent to give to the latter the whole of the common property in its entirety." *Pratt* v. *Douglas* (at *p. 538*).

The will of Alfred Keene in the devise to Joseph used the specific words of description, "the house and premises where I now reside," and it is clear from this that he intended this property upon the death of his widow should be Joseph's absolutely; furthermore, the will states that this gift to Joseph was in satisfaction of testator's indebtedness to him; and the remainder of testator's estate excepting an undivided one-third interest in the residue was given to his widow and two other sons. And it would seem under the principle relating to a specific devise stated above, that the specific gift of the homestead to Joseph put the widow to her election. She could not

assert her title to it and accept the personal property bequeathed to her without defeating and disappointing the will; nor could her sons Thomas and Howard do so on her death, as they had accepted the provisions made for them under their father's will.

On the distribution of Alfred's estate, and the payment to the widow and to Thomas and Howard of the gifts made to them, there was nothing but Joseph's undivided one-third interest in the residue out of which testator's indebtedness to him could be paid.

This clearly was not testator's intention. His scheme of distribution contemplated suitable provision for his widow and children and the settlement of the indebtedness owing by him to Joseph. His widow and his sons Thomas and Howard could not take the provisions made for them and then claim title to the property devised to Joseph without disturbing and disappointing testator's other dispositions of his property and defeating his attempt to settle the indebtedness owing by him to Joseph by the devise of his home.

It is well settled that a person accepting a benefit under a will is required, on the doctrine of election, to perform all the requirements of the will. "He cannot disappoint a will under which he takes a benefit." *Bird* v. *Hawkins, 58 N. J. Eq. 229* (at *p. 246*).

And the rule is equally well settled that a man shall not take any beneficial interest under a will, and at the same time set up any right or claim of his own, if otherwise legal and well founded, which shall defeat or in any way prevent the full effect and operation of every part of the will. *Van Duyne* v. *Van Duyne, 15 N. J. Eq. 503.*

Mrs. Keene and her sons Thomas and Howard in accepting the benefits provided for them under Alfred's will, were required on the doctrine of election to relinquish such of their rights as were inconsistent with the provisions of his will "in order that no disposition of the testator therein may be defeated." *Pratt* v. *Douglas, supra.*

The fact that Mrs. Keene accepted the provisions made for her by the will, and that after the death of her husband she con-

tinued for a few years, and until her death, to reside on the property with Joseph in the enjoyment of the life estate therein given her by the will; and that Thomas and Howard removed from the state and established homes elsewhere, and allowed Joseph to assert and to exercise sole ownership of the property, without claiming, at any time, their right to any interest therein, justifies the conclusion that they consented to and acquiesced in the disposition of the property made by their father's will and elected to take the benefits given them by his will, rather than assert their right to an interest in the property.

And the same comment can be made and the same conclusion reached on the conduct of the defendants in accepting the provisions made for them by the will of their Uncle Joseph.

Since the death of Alfred, in 1880, all parties, including the defendants, having any right to assert an interest in the premises in question remained silent until after Joseph's death. They permitted him to lose the opportunity of having the indebtedness owing him by his father paid out of his father's estate; they allowed him for thirty years to bear the expense of maintaining and improving the property, and the defendants accepted the benefits amounting to about $4,500, which Joseph gave them by his will, under the belief that he owned the premises in question; and they now seek to keep the benefits his will gave them and to defeat and disappoint the will in other respects.

It is not claimed that defendants or their parents or grandmother acted or made their election in ignorance of their right to the property, or under a mistake of the real nature and extent of their respective rights therein. If their election had been made under such circumstances it would not be binding, and could be revoked, unless rights of third parties have intervened, which would be interfered with by the revocation.

In *Young v. Young, 51 N. J. Eq. 500,* Vice-Chancellor Pitney stated that—

"The authorities seem to concur in holding that in order to make the enforcement of one demand, which is inconsistent with another, a final and binding election to take that and not the other, the party must either be shown to have acted advisedly,

with proper knowledge of all the circumstances, and with a consciousness of the effect of the act relied upon, or the party adversely interested must have so changed his position in reliance upon such action that it would be inequitable to permit the party who has the choice to recede from his former action."

Chancellor Green, in *English* v. *English, 3 N. J. Eq. 509,* uses this language:

"What acts of acceptance or acquiescence are sufficient to constitute an election cannot be designated with sufficient precision to justify a general rule. Each case, as it occurs, must be governed by its own peculiar circumstances. The general questions are, whether the parties acting or acquiescing were cognizant of their rights; whether they intended to make an election; whether they can restore the individuals affected by their claim to the same situation as if the acts had never been performed, or whether these inquiries are precluded by lapse of time."

These statements of the law are particularly applicable to the situation under consideration. Lapse of time and the death of Mrs. Keene and her three sons render it impossible to restore the parties to their original position. In reliance upon the election of his mother and brothers, Joseph made no effort to collect the indebtedness owing him from his father's estate; and relying on their apparent election he permitted them to divide the greater part of the estate among themselves; during the thirty or more years of his occupancy of the premises, with their consent or acquiescence he treated the property as his own and paid the taxes, made improvements thereon, and generally acted as, and publicly claimed to be, the owner of the property, and it would now be impossible to have an accounting of his expenditures in order to reimburse his estate. He, furthermore, in connection with the devise of this property to complainant, made substantial gifts to the defendants which they accepted and do not offer to return; and if they were able and willing to make return of the legacies he gave them, it cannot be said that the amount thereof, with interest, would be sufficient to reimburse his estate for all that was due him.

The doctrine of election is one resulting in compensation, and not in forfeiture (*Young* v. *Young, supra*), and if it were

possible for defendants to properly reimburse and compensate the estate of Joseph for all that was due him, a different construction might be put upon their conduct and upon the acts and conduct of Mrs. Keene and her sons. But as such compensation cannot be made, principally because the amount required cannot be ascertained with any degree of accuracy, I deem it equitable under all the circumstances that defendants should not be permitted to recede from the former action of themselves and of those under whom they claim; and to hold that Mrs. Keene and her sons exercised their election under the will of Alfred Keene, and that defendants also exercised their election under the will of their Uncle Joseph. This conclusion makes it unnecessary to pass upon the other questions raised on the argument.

A decree for complainant will therefore be advised, with costs.